1835.

In the matter of Hopper.

---

## In the matter of Hopper, a lunatic.

After the appointment of a committee of a lunatic by the court of chancery, it is a contempt of court for a creditor to sue the lunatic, or to levy an execution upon his property, without permission of the chancellor or vice chancellor having jurisdiction of the proceedings in lunacy.

The proper course for the creditor of a lunatic, who is under the care of a committee, is to apply to the court, by petition, for the payment of his debt out of the lunatic's estate ; or for leave to bring a suit, or to be permitted to establish his debt on a reference to a master, if the existence of the debt is disputed by the committee.

Where a judgment is obtained against a lunatic, and an execution issued and levied upon his property, before the institution of proceedings in lunacy in the court of chancery, the court will not set aside the judgment and execution upon a summary application of the committee, although such judgment and execution are over-reached by the finding of the jury upon the commission of lunacy.

A vice chancellor may appoint his son a committee of a lunatic, and may hear and decide upon an application of such committee in behalf of the lunatic or his estate ; the committee being only an officer of the court, and having no personal interest in the questions to be decided by the vice chancellor.

The provision of the revised statutes which deprives a judge of the power of acting as such, where he is related to either of the parties by affinity or consanguinity, does not extend to a case where a relative of the judge is only a formal party to the suit or proceeding, and has no personal interest in the subject matter of the litigation, or in the decision to be made therein.

THIS was an application by the committee of a lunatic to stay the proceedings in certain suits commenced against the lunatic, after he had been found to be of unsound mind, upon a regular inquisition, under a commission issued out of the court of chancery. The petitioner also asked for a stay of the proceedings upon executions, against the property of the lunatic, which had been issued out of a court of law before the institution of the proceedings in the court of chancery, to obtain a commission of lunacy. The proceedings in this court were commenced before the vice chancellor of the first circuit, and his son was appointed the committee, upon the application of the friends of the lunatic. The petition upon which the present motion was founded, although it was signed by the committee, did not name or describe him as the petitioner; neither was the petition addressed to the chancellor, as required by the 10th rule of this court. The application was, in the first instance, made to the vice chancellor; but an objection being made that he was disqualified from acting as a judge upon the matter of the petition, on the ground that he was the father of the committee, he declined deciding the matter, and directed the application to be made to the chancellor.

*C. Edwards,* for the petitioner.

*W. Silliman,* for the plaintiffs in the suits at law.

THE CHANCELLOR. After the appointment of a committee of a lunatic by this court, no creditor can be permitted to interfere with the property in the hands of the committee, without the permission of the chancellor or vice chancellor having jurisdiction of the case. And the sheriff who should attempt to levy upon the property of the lunatic, under such circumstances, would be punished as for a contempt of the court. Neither will this court permit a suit at law to be brought against the lunatic, without first asking the permission of the court, for the recovery of a debt, or otherwise, while he is under the care of the committee. The proper course for the party who has a claim against the lunatic, or his estate, is to apply to this court, by petition, for the payment of the debt, or

1835.

In the matter
of Hopper.

for leave to bring a suit for the purpose of establishing the claim. And if the chancellor or vice chancellor, by whom the committee was appointed, is satisfied the debt is justly due, the committee will be ordered to pay it out of the estate ; or if the claim is doubtful, the court will either have it settled by a reference to a master, or give the claimant permission to establish his claim by a suit at law or a bill in equity, as may be proper, under the particular circumstances of the case. The institution of suits against the lunatic, after he had been found to be such, without the permission of the vice chancellor before whom the proceedings in lunacy were pending, was therefore improper. And although the affidavit of the party and his attorney, that they were ignorant of the fact that the proceedings in lunacy had been commenced, may be sufficient to excuse them from punishment for a wilful contempt, yet, as the *lis pendens* was constructive notice to them and all others of the institution of those proceedings, the court may order the proceedings to be stayed as of course.

But in the cases in which judgments had been obtained and executions issued and levied on the property of the lunatic, before this court obtained jurisdiction in the matter by the institution of proceedings before the vice chancellor to obtain a commission of lunacy, I doubt whether it is right to interfere in this summary way to deprive the plaintiffs of their legal liens, although the recovery of the judgments and the whole proceedings in those suits are over-reached by the finding of the jury, under the commission of luncy. As the court of law had jurisdiction of the cases, if the judgments are either irregular or erroneous, on the ground that the suits were prosecuted against a defendant who was legally incompetent to make any defence thereto, the remedy appears to be by a summary application to the court in which the judgments were obtained, or by a writ of error. Or if there is no remedy at law, and the judgments have been improperly recovered against a lunatic, for pretended claims, which were not justly due, it may be a proper case for the committee to proceed by a bill in equity, to be relieved against such judgments.

The objection that the vice chancellor of the first circuit had not jurisdiction to appoint the committee and to approve

of the bond, because such committee happened to be his son, is not well taken. Neither is there any legal objection to the vice chancellor's hearing this application. The committee has no personal interest whatever in this matter ; he being the mere officer or agent of the court, to protect the person and property of the lunatic, subject to such orders and directions as the vice chancellor having jurisdiction of the case may think proper to make or give, from time to time, relative to the trust. The case, therefore, does not come within the letter or spirit of that provision of the revised statutes which disqualifies a judge from acting as such, in a suit to which he is a party, or in which he is interested, or where he is related to either of the parties by affinity or consanguinity. (2 *R. S.* 275, § 2.) The act of January, 1834, relative to vacancies and disabilities in the office of vice chancellor, only extends to cases of legal incompetency, and not to those in which the vice chancellor, from a mere feeling of delicacy, is unwilling to decide the cause or matter pending before him. In all such cases, unless they come within the provision of the sixty-third section of the title of the revised statutes relative to the court of chancery, (2 *R. S.* 178,) the vice chancellor should decide the question or matter upon which a decision is called for ; leaving the party who may feel dissatisfied with such decision to his appropriate remedy, by appeal to the chancellor.

The informality of this petition is such as to render it improper to present it to the vice chancellor in its present shape ; and as I have no authority to proceed upon it as an original application to the chancellor, the petition must be dismissed, but without prejudice to the rights of the committee to apply to the vice chancellor by a new petition for such relief and direction in this matter as may be proper. As the committee has acted under the direction of the vice chancellor in making his application here, there is no ground for charging the estate of the lunatic with the costs of opposing the same. And costs should not be charged upon a committee personally, where he acts in good faith in making an application to the court, in a case of this kind.