### In the matter of McLAUGHLIN, committee of RUFUS MEECH, an habitual drunkard.

When a suit at law has been commenced against an habitual drunkard and others before commission found, and judgment rendered by the confession of the attorneys of the habitual drunkard after commission found, it rests in the discretion of the Court of Chancery whether they will set aside such judgment upon the application of the committee. This discretion will not be exercised by the Court of Chancery, unless they are informed of all the circumstances in relation to the judgment, as to the habitual drunkard—whether it was against him as a partner, principal or surety, or endorser—upon contract or for tort— and particularly when the Supreme Court, in which it was rendered, have upon application refused to set the judgment aside.

Nov. 1839.

In the matter
of
M'Laughlin.

Unless the whole circumstances are before the court in relation to such judgment, the application by the committee to set it aside, will be denied with costs.

Every case of application to the Court of Chancery relative to judgments against a person legally incompetent, depends upon its own circumstances, and will be decided to subserve the ends of justice according to such circumstances.

THIS is a petition by the committee of the habitual drunkard, praying that a judgment recovered in the Supreme Court of this State, by the Massillon Bank, against the habitual drunkard jointly with William C. Rice and William Moore, for $3,964, and docketed in May term, 1839, may be vacated as to the said Rufus Meech, or his real estate released, or that it be declared void as against him and his property.

It appears that the suit in the Supreme Court was commenced in September, 1837, but it does not appear for what cause of action, or in what manner Meech was connected with it, whether as principal, surety, partner, or joint debtor. An inquisition was found against Meech as an habitual drunkard, and the petitioner was appointed his committee, May 7, 1838, and entered upon the duties of his office. Gay & Stevens were the attorneys for the defendants in the suit at law, and gave a relicta as such in April, 1839, upon which the above judgment was entered, not reflecting at the time that one of the defendants and his property was subject to the guardianship of the petitioner. Application was made to the Supreme Court to set aside the judgment so far as Meech was concerned, which was refused. Application was also made to the plaintiff's attorney to discharge the judgment so far as related to Meech, which was declined. The habitual drunkard is the

owner of real estate affected by the judgment, and
this application is now made for his relief.

*Gay & Stevens,* for the petitioner.

*O. Hastings,* for the Massillon Bank.

THE VICE CHANCELLOR. The statute has given the care and custody of persons of unsound mind, and persons incapable of managing their own affairs in consequence of habitual drunkenness, and of their real and personal estate, to the Court of Chancery, except in certain cases when the Court of Common Pleas have jurisdiction. This power is given for the purpose of protecting the property of this unfortunate class from waste and destruction—to ensure a competent provision for maintenance and support—to secure its preservation for the payment of his debts—and for the protection of himself against his own evil propensities—and for the protection of his relatives, creditors, and society from the destructive consequences of such propensities.

The whole property of persons of this class, is in the custody and under the control of the Court of Chancery.

It is an interesting question to determine how creditors are to proceed to collect their debts against persons convicted of such incapacity, and it is a question which may assume various complexions according to the time when the debt was contracted, whether before or after the incapacity accrued—according to the subject matter of the debt, whether meritorious or only calculated to minister to vicious propensities—and according to the time when the remedy is sought, whether before or after inquisition found. There may be also other circumstances which may vary the

Nov. 1839.

In the matter of M'Laughlin.

aspect of any given case, as in the present one, where the habitual drunkard is proceeded against jointly with those of legal capacity.

The general doctrine laid down by the Chancellor is that a creditor must obtain payment by petition to this court, who will, if the debt is found to be a just one, order the committee to pay it out of the property in his hands. It is also laid down generally that no suit at law can be brought against a lunatic, &c. without the permission of this court; and that any attempt to levy upon the property of a lunatic while under the care of a committee, would be punished as a contempt. 5 Paige, 489. The Court has even gone further, and said that a creditor of an habitual drunkard who has commenced a suit at law, must give up his proceedings and pay his own costs, before this court will interfere in his behalf. 3 Paige, 200. It has likewise set aside judgments confessed by persons in such situations. 2 Paige, 422. There are various decisions in our Chancery reports upon questions arising under this or a similar species of legal disability. The *decisions* in each case are recommended by their propriety and evident soundness, as a glance at the circumstances of each case will abundantly shew; but there are some *opinions* hastily thrown out as connected with this subject; and not called for by the facts of the case, about the propriety of which there may well be a great variety of sentiment. If a keen and greedy sharper beguiles a young man, rendered legally incapacitated by his dissolute habits, and found so by a jury, into worse than useless expenses, and takes a judgment as security for his payment, both morality and justice demand that such securities be vacated. If a person has a

debt against another who has become lunatic, which debt he took no means to enforce while the debtor remained of sound mind, it seems no more than just and right that he should apply to this court who has acquired the custody and control of the lunatic's estate, inasmuch as this court has then the means of doing equal justice to all creditors so situated. The Chancellor suggests in another case, that when judgments and executions have been obtained and levied upon the property of a lunatic, before this court obtained jurisdiction, he doubts whether it is right for this court to interfere to deprive the plaintiffs of their legal liens, even though the judgments are overreached by the finding of the jury; and in such case as the last, he suggests that the courts of law which rendered the judgments would be fully competent to give adequate relief, by inquiring as to the competency of the defendant at the time the contract was made or the judgment rendered. 5 Paige, 491. In another case he intimates that he should refuse to interfere against a creditor who had sold goods or transferred property to the lunatic, by which the estate of the lunatic was benefitted, so as to destroy the security of such creditor. 2 Paige, 158.

On the whole, there seems to be no fixed and rigid rule, but each case is left, as I deem it should be, and as the statute evidently contemplated it should be, to the sound discretion of this court, to be exercised according to its own peculiar circumstances, and the party be permitted to proceed at law or be restrained from so doing, as equity shall require. I see nothing in the statute which takes away jurisdiction from the courts of law; and while it has conferred ample and extraordinary powers upon this court, they should

be used with a sound discretion and to subserve in the best mode the great ends of justice.

In this case, it does not appear from the papers what was the subject matter of the suit at law— whether it was upon contract or for a tort—if a contract, whether Meech was principal, surety, or partner—how much of the debt he, as an individual, was equitably bound to pay—or whether his property received any, and what advantage from the debt.

It does not appear when the contract was made, if it was a contract, or whether it was over-reached or not by the finding of the jury. It only appears that the suit was commenced in Sept. 1837, and that the petitioner was appointed a committee in April, 1838; and it is quite apparent that Meech was subsequently fully capable of managing his own business, in point of fact, which was probably the reason why the attorneys of neither party called to mind his legal incompetency. This is a judgment rendered against Meech in connexion with two others, upon a suit commenced before Meech's incompetency, and a judgment rendered too upon a confession signed by his attorney. There has yet been no attempt made to enforce it. The judgment is of large amount; and I might do great injustice, not only to the plaintiffs in the suit, but to Meech's co-defendants, if I granted the prayer of the petitioner. It will be time enough for this court to interfere when the facts of the case are more fully presented, and when the plaintiffs attempt to enforce their judgment. I cannot clearly determine upon what ground the Supreme Court refused relief, but the question was presented to them, and they were competent to give relief if Meech was incapacitated at the time of the rendition of the judgment.

My attention has been called to the case *ex parte* Dikes, 8 Vesey, jr. 79, as an authority to shew that the English Chancery would leave a judgment creditor of a lunatic to collect his judgment at law. This was decided in 1803, when the Lord Chancellor had no authority to order the sale of the real estate of a lunatic. The Lord Chancellor, in that case, says that the circumstances there presented were lamentable, and ought to be provided for by act of Parliament.

As the powers of the English Court of Chancery were not as ample in this respect as the powers of our own court, the case is hardly parallel.

I understand such powers have since been conferred upon the Lord Chancellor by act of Parliament, since which time no decision of that court has been referred to.

The prayer of the petitioner is denied, with costs to be paid out of the estate.