## Case No. 3,623.

### DAVIS v. ANDERSON et al.

[6 N. B. R. 145.] [1]

District Court, E. D. Missouri. 1872.

BANKRUPTCY—SECURED CREDITORS — EXECUTION SALE OF LANDS—JURISDICTION OF BANKRUPTCY COURT — RECORDING REGISTER'S ASSIGNMENT— LIMITATIONS — SALE FREE OF INCUMBRANCES— CREDITOR'S RIGHTS.

1. Creditors of bankrupt having security, whether by judgment, mortgage or otherwise, must prove their debts against the bankrupt and foreclose their liens under the authority of the court in bankruptcy, or they may not only be barred of their debt, but may also lose the benefit of their securities.

[Applied in Re Anderson, 23 Fed. 500.]

2. A sale of the debtor's land by virtue of an execution issued and levied after the filing of the petition in bankruptcy, will not pass the title to the land as against the assignee, although the judgment was entered and the lien created prior to the bankruptcy.

[Cited in Re Hufnagel. Case No. 6,837; Pickett v. McGavick. Id. 11,126.]

3. After the commencement of the proceedings in bankruptcy, all the property and assets of the bankrupt are in custodia legis, within the control of the bankrupt court only, and no other tribunal can interfere with its process.

4. It is not essential to the title of the assignee that the assignment to him by the register should be recorded within six months from its date. The title of the assignee takes effect by relation from the commencement of the proceedings in bankruptcy, and the recording is not required for the mere purpose of giving notice to purchasers.

5. The limitation of two years in section two of the bankrupt act [of 1867 (14 Stat. 518)] applies only to property held adversely to the bankrupt and his assignee.

[Cited in Re Brinkman. Case No. 1,884; Smith v. Crawford, Id. 13,030; Andrews v. Dole, Id. 373; Taylor v. Irwin, 20 Fed. 617.]

6. Where the bankrupt fraudulently conveyed his lands to avoid a judgment, a purchaser under the judgment and a sale made under execution after proceedings in bankruptcy commenced, cannot defend on the ground that the assignee did not commence suit to set aside the execution sale and deed within two years after the assignment. No cause of action accrued to the assignee against such purchaser until he acquired his title under the judgment and execution sale.

7. The bankrupt court may order a sale of the bankrupt's property free and clear of encumbrances, and the secured creditor will then have his remedy only against the fund in court. If the secured creditor fails to prove his debt and proceeds against the fund, he does so at his peril.

[Cited in Phelps v. Sellick, Case No. 11,079; Sutherland v. Lake Superior Ship Canal R. & I. Co., Id. 13,643; Re Hufnagel. Id. 6,837. Quoted in Re Brunquest, Id. 2,055.]

TREAT, District Judge. This is a bill to set aside certain sheriff's deeds for bankrupt's property, the levy, sale and deeds having been made after adjudication had in bankruptcy. On the fourth of April, eighteen hundred and sixty-seven, six judgments were rendered in the circuit court of Scott county in favor of said county against Archibald P. Lane and others. On the first of February, eighteen hundred and sixty-eight, Lane filed his petition and was adjudicated a bankrupt. On the twenty-sixth of March following, the plaintiff was appointed assignee. On March thirteenth, eighteen hundred and sixty-eight, executions were issued on said judgments, and a levy made on a portion of bankrupt's real estate; and on April ninth, eighteen hundred and sixty-eight, the sale thereof was made to Joseph T. Anderson and William B. Anderson, and the deed therefor executed and delivered October sixth, eighteen hundred and sixty-eight. On September fifteenth, eighteen hundred and sixty-eight, a levy was made on another portion of bankrupt's real estate, and a sale had thereunder October seventh, eighteen hundred and sixty-eight, to said Anderson, to whom the sheriff's deed therefor was made and delivered November thirteenth, eighteen hundred and sixty-eight. On March nineteenth, eighteen hundred and sixty-nine, another levy was made under said judgments, and a sale on April ninth, eighteen hundred and sixty-nine, of another portion of the bankrupt's real es-

[1] [Reprinted by permission.]

tate, was made to Joseph T. Anderson, and a deed therefor delivered. The price paid at the first sale was twenty-five dollars; at the second fifty-five dollars, and at the third twelve dollars. Said property is worth from five to eight thousand dollars. At the time of each of said sales, said Andersons were co-partners in business, and on dissolution of their partnership, February fourteenth, eighteen hundred and seventy, Joseph T. conveyed to William B. all his interest in said real estate. The assignee did not record in Scott county the register's assignment to him within six months from the date thereof, nor until the sheriff's sale had been recorded. The several judgment debts were duly scheduled and notice of bankruptcy, &c. sent to the judgment creditor in February, eighteen hundred and sixty-eight; but he has never appeared to prove his demand or obtain any order of the court with reference thereto. Said Joseph T. Anderson was also scheduled as a creditor, and duly notified of said proceedings in bankruptcy in February, eighteen hundred and sixty-eight.

This suit was commenced November seventh, eighteen hundred and seventy. It appears that soon after said judgments were rendered against him, the bankrupt entered into a fraudulent scheme to conceal his property from his creditors. By deed dated May first, eighteen hundred and sixty-seven, he conveyed for the pretended consideration of five thousand dollars, all the real estate in question to one Goodin, and on September seventeenth, eighteen hundred and sixty-seven, Goodin executed a deed of trust thereon to secure a fictitious note in favor of Schwank; and October seventeenth, eighteen hundred and sixty-seven, the trustee sold the property to Schwank for default in the payment of said note. That contrivance was suggested to Lane by an attorney, in order to enable Lane to escape payment of his surety debts—the other parties agreeing to aid in the scheme for covering the property for the benefit of Lane. None of the facts concerning that fraud became known to the assignee until about November seventh, eighteen hundred and seventy, when a bill was filed against the parties thereto to have said deeds adjudged void, which decree has been rendered. On the same day as above stated, this suit was brought. Lane received his discharge in eighteen hundred and sixty-eight, there being no assets reported.

The principal questions of law which arise on the foregoing facts relate to the duties of judgment debtors and assignees, and to the effect of the limitation of two years prescribed by section two of the bankrupt act. Under the Missouri statutes, the judgments mentioned were a lien upon Lane's real estate in Scott county. The judgment creditor seems to have supposed that no necessity existed for proving his demand in the bankruptcy court, or for invoking the aid of that court. Although the judgments had been ob-

tained in April, eighteen hundred and sixty-seven, no execution or levy was made until Lane had been adjudged bankrupt, when it was probably deemed necessary to enforce the lien through executions from the state court.

Under the bankrupt act all subsisting liens are fully protected, but all lien creditors are required to prove their debts, however evidenced. This is apparent from section twenty-two of the act, and from various other provisions thereof. Section twenty-two requires the creditor to prove his demand and disclose "whether any and what securities" he holds, and the act rests in the court "the ascertainment and liquidation of the liens and other specific claims." Secured debts may be paid, or the secured creditor may relinquish his security, or he may become a general creditor "for the balance of the debt after deducting the value of such property, to be ascertained by agreement between him and the assignee, or by a sale thereof, to be made in such manner as the court may direct;" or the assignee may, if the value of the property exceeds the debt, release to the secured creditor the equity of redemption on receiving the excess; or he may sell the property subject to the secured creditor's claim. Section twenty-two further provides that "in either case the assignee and creditor respectively shall execute all deeds and writings necessary or proper to consummate the transaction. If the property is not sold or released and delivered up, the creditor shall not be allowed to prove any part of his debt." It must be observed that the creditor referred to is "a creditor who has a mortgage or pledge of real or personal property of the bankrupt, or a lien thereon for securing the payment of a debt owing to him from the bankrupt." In Buckingham v. McLean, 13 How. [54 U. S.] 167, it was held that "whenever by the local law a judgment or an execution operates to make a lien on the property, it is to be decreed a security." That was a decision under the bankrupt act of eighteen hundred and forty-one, and the act of eighteen hundred and sixty-seven is still fuller and more explicit as to secured creditors. Hence a judgment creditor's demand is scheduled, and he must prove his demand in bankruptcy, and may elect which of the many modes contemplated with reference thereto he will adopt. While his lien may be enforced in any of the prescribed modes, it must be enforced through the bankrupt court under whose control the bankrupt's property and rights of property pass. All of his property is held to be in custodia legis, subject to the order of the bankrupt court; and if so, the principles laid down in Taylor v. Carryl, 20 How. [61 U. S.] 583, apply and are decisive. See authorities cited post. The supreme court of Illinois in Cole v. Duncan [58 Ill. 176], held that the mortgagee might foreclose the mortgage in a state court, after the mortgagor was adjudged

bankrupt, without reference in any way to the bankrupt court. It is said that the supreme court of Pennsylvania has intimated similar views. That was a suit to foreclose a mortgage and the mortgagor appeared and pleaded his discharge in bankruptcy. His plea was held bad, for the reason that his personal discharge did not divest the lien; and the court directed an amendment of the bill to bring in the assignee. It also held that the mortgagee was not bound to prove his lien demand in the bankrupt court. The case seems not to have been well considered, and certainly is not in accord with the provisions of the bankrupt act and the decisions of the United States courts.

The bankrupt act does not divest the lien either of a mortgage or judgment, but provides the means of enforcing them through the bankrupt court. The assignee has vested in him all the property interests of the bankrupt, legal or equitable, for the benefit of all creditors, whether secured or unsecured. The administration of the estate demands that he should be a party to all proceedings affecting it in any way. Under section twenty, as has been seen, he may, under direction of the bankrupt court, redeem from a mortgage or release the mortgagee. If the mortgagee can foreclose in a state court without reference to the assignee's rights and duties under the bankrupt act, then many of the mischiefs intended to be guarded against will prevail without serious "let or hindrance." A fraudulent cover of the bankrupt's property in the form of a mortgage can readily be made effective; for when mortgagor and mortgagee combine, and the assignee as representing the creditors is not made a party to the suit of foreclosure, how is the fraudulent scheme likely to be defeated? The act contemplates that all suits affecting the bankrupt's estate shall be prosecuted in the proper United States court, unless the United States court in charge of the estate otherwise direct. If this was not so, it would be very easy to devour the estate with unnecessary costs and delay its final settlement by uncontrolled litigation in the various state courts of the country. Whatever reason exists for compelling unsecured demands to be litigated in the bankrupt court is as potential with respect to secured claims—nay, is often more cogent. The various statutory provisions to defeat preferences and frauds would be unavailing, if the validity of a pretended mortgage debt could not be investigated, nor the validity of a judgment fraudulently obtained. If a mortgagee, without proof of the mortgage debt before a bankrupt court, or if a judgment creditor, without proving his judgment debt, can, despite the bankrupt court, proceed to swallow up the bankrupt's estate, then there would exist no uniform system, and no adequate protection for the general rights of creditors.

The first inquiry is, whether a mortgage debt really and honestly exists. Who is to

ascertain its existence? Is there any distinction in this respect between such a debt or any other, or any reason why a creditor of one kind should ignore the bankrupt court rather than another and interfere with property in its custody? But it is not necessary to elaborate this point. The act does not attempt to divest a lien; but it does require those who possess them to enforce their claims through the bankrupt court, and in so doing does not interfere with the rights of such a creditor any more than it does with the rights of other creditors. If the act did not exist, an unsecured as well as a secured creditor could resort to state courts, yet it is not pretended that, after bankruptcy, an unsecured creditor can sue the bankrupt in a state court in violation of section twenty-one, and the other provisions of the act.

The question is not as to the rights of property or the existence of liens, but of jurisdiction for their ascertainment and enforcement. The views expressed might be vindicated more fully if the second clause of section twenty-five, as to property in dispute, and sections twenty-seven and twenty-eight, as to settlement of the estate, and sections fifteen, sixteen and seventeen as to the rights and duties of assignees, with respect to suit pending or to be brought, were carefully analysed. It is true the act is not always precise in its use of terms, and some of its provisions are seemingly inconsistent with others. Thus, it is not easy to determine the precise effect of sections twenty, twenty-one and twenty-two, and the course to be pursued under them, with respect to certain demands, and hence the conflicting decisions with respect thereto. By section twenty a secured creditor may prove the balance of his debt over and above the value of the security, or release the security and prove the whole of the debt, sharing pro rata with the unsecured creditors as to the amount so proved. The language is, as to a secured creditor: "He shall be admitted as a creditor only for the balance of the debt," seemingly excluding him as a creditor to the extent that he has ample security so long as he retains that security; but section twenty-two requires that "all proofs of debts against the estate of a bankrupt" shall be made before a register, &c., and that the claimant shall disclose what securities he holds. Those and other provisions show that the language just quoted means that the secured creditor shall prove his debt and disclose the securities, but shall not be admitted as a creditor against the general assets to share pro rata with unsecured creditors, except for the balance of the debt remaining unsatisfied after the securities have been exhausted. By section eleven the bankrupt is required to place in his sworn schedule "all his debts," and "a statement of any existing mortgage, pledge, lien, judgment, or collateral or other security given for the payment of the same;" also in his inventory of assets, "whether there are

any, and if so what encumbrances thereon." A public notice and special notice is given "to all creditors upon the schedule," stating that "a warrant in bankruptcy has been issued against the estate of the debtor;" that "the transfer of any property by him is forbidden," and that "a meeting of the creditors to prove their debts and choose one or more assignees, will be held." Thus section eleven includes secured as well as unsecured creditors, just as do sections twenty, twenty-one and twenty-two. But section twenty-one evidently has reference, in its first sentence, to debts proved against the estate for pro rata distribution—that is, if a judgment creditor elects to abandon his unsatisfied judgment and prove his original debt, he can do so, thus availing himself of the benefit further provided for in section twenty-two as to preferences. The second sentence forbids creditors "from prosecuting to final judgment in law or equity any suit against the bankrupt until," &c.; and the third sentence provides for the stay of proceedings in such suit, except by leave of the bankrupt court, &c. Very serious questions have arisen under section twenty-one, where such suits have been prosecuted without a stay of proceedings asked by the bankrupt. Inasmuch as the discharge of the bankrupt leaves him still liable for his debts created by fraud, embezzlement, defalcation, &c., suits for recovery on such demands, it has been supposed, might proceed to final judgment, though the debt had been proved before the register and dividends received, as the act expressly permits. But whether that be correct ruling or not, (and no opinion is now given on the point), it is obvious that all debts have to be scheduled, all creditors notified, and all who wish any proceeds out of the bankrupt's estate must prove their demands, whether the bankrupt is discharged and released from the debts or not. On no other ruling can the various provisions of the act be reconciled nor the estate properly administered. The bankrupt schedules the secured debt and states what the security therefor is; the secured creditor proves his debt and discloses the security: and the assignee is vested with the bankrupt's rights of property as they stood at the date of commencing proceedings. The assignee is in a more favorable condition than the bankrupt as to many questions; for, representing creditors, he may cause conveyances to be set aside which the bankrupt could not himself avoid. Such evidently is the case with regard to preferences, voluntary conveyances, judgments suffered or procured, &c. Hence if the bankrupt court is not to intervene, creditors will be deprived of their rights and the act to that extent become a nullity.

This court has held uniformly that after adjudication of bankruptcy an execution and levy may be enjoined, so that the bankrupt court may proceed to dispose of the property in such manner as to secure and enforce the rights of all concerned in the bankrupt's estate—that the administration of no part thereof, whether a lien thereon exists or not, is to be taken from it. The assignee under the direction of the bankrupt court must reduce the assets to money and account therefor to the fullest extent. The title to real estate, though judgment lien thereon exists, is in the assignee. How is that title to pass from him? If he sells, releases or compromises, he does so by order of the bankrupt court. If an adverse interest therein is claimed, he may cause the same to be judicially settled, either by litigation or by reporting the facts and receiving the proper order of the court in the premises.

Without pursuing this branch of the subject further, it may suffice to say that bankrupt courts have invariably, as occasion demanded, granted injunctions or taken such other steps with respect to judgment and other liens, as indicated that no other view obtained than that the property of the bankrupt could not be reached without the intervention of the proper bankrupt court—or in other words, that such property, whatever might be the liens upon it or its condition, was in custodia legis, not to be interfered with by any process or proceedings from any other tribunal.

But it is said that the assignee did not file a copy of the assignment to him for record in Scott county during the prescribed six months, and therefore the purchasers at the sheriff's sale had no notice that the title had passed out of the bankrupt into the assignee. As a matter of fact, Joseph T. Anderson did have such notice before any of the levies or sales. At the first two sales he and his brother became joint purchasers, and at the third he was sole purchaser. Hence if it were important to charge the defendants with notice, they stand so charged by the proofs. But what is the object of the requirement to record the assignment in the various counties where the realty is situated? The recording thereof is not essential to the title, for by the assignment and operation of the law, title, by relation, passed to the assignee as of the date of filing the bankrupt's petition. Of course the assignment, which cannot be made before the election of an assignee, cannot be recorded prior thereto, that is, before it exists. If its validity depended on its being duly recorded, then it could not relate back; and if the purchase from or under the bankrupt—as by direct conveyance from him, or by execution, levy and sale on judgment previously rendered—is to be held valid because the purchaser had no notice that his title was diverted, then the relation spoken of would be a nullity. Is it to be contended that sales made intervening the adjudication of bankruptcy and the election of the assignee, are valid unless actual notice of the adjudication is brought home to the purchaser and no constructive notice by a recorded assignment

had been made? It is obvious that the requirement about recording is for other purposes. It has been held that it was not to give force or validity to the transfer to the assignee, or for the purpose of constructive notice within the ordinary interpretation of registry acts, but to enable the purchaser under the assignee to have in the proper county a record of his derivative title. It was wise, however, for other reasons. As the county records should contain a complete registry of all instruments on which transfers of titles depend, it was eminently proper for the protection of all concerned that the assignment in bankruptcy should be there recorded—an instrument in writing which though not conforming in the usual particulars with conveyances from one party to another, or even with sheriff's deeds, yet by the paramount law is a complete transfer and conveyance of all the bankrupt's real and equitable interests, with the exceptions named in the act. That instrument is not signed by the bankrupt, or acknowledged by him, but is signed by the register or judge. When the assignment is recorded, the record or duly certified copy thereof is by section fourteen made evidence of the assignment in all courts, notwithstanding very different rules as to instruments affecting realty may obtain under state laws.

It is to be remarked that the clause directing the assignment to be recorded gives no further effect thereto than that just stated. The assignment itself passes the property with relation back to the commencement of proceedings, and all subsequent purchasers are affected accordingly, whether they purchased before assignment actually made or afterwards, and consequently the recording of the assignment is not essential to the validity of the transfer, and is not designed to operate as under state registry acts. The purchaser from the bankrupt after adjudication in bankruptcy or commencement of proceedings, although he had no notice thereof, would take no title. The question of notice could not therefore arise. As held by the Iowa supreme court in the cases hereafter referred to, purchasers under the bankrupt, after the transfer of title to the assignee, bought nothing, because they took only what the bankrupt had, and after proceedings in bankruptcy the bankrupt had nothing to be taken. The purchase being of what the bankrupt debtor had at the time, and all of his interest having passed to the assignee previously, the purchaser acquired no title as against the assignee.

A more serious question pertains to the true construction of the limitation in section two and the proper application thereof to the facts before the court. So far as was disclosed by the bankrupt's schedule, and as the records of the county showed, the bankrupt had no interest in this real estate. Lane had conveyed it to Goodin some nine months previous to the time he was adjudged a bankrupt for what purported to be a valuable consideration, and therefore there was no need to record the assignment in Scott county, or to institute suits with reference to this property against any person. It was not until November, eighteen hundred and seventy, that the fraud as to the Goodin and Schwank deeds became known to the assignee or creditors, and consequently no one except Goodin had any interest in combating the levy and sales by the sheriff. There was no apparent interest in the assignee to be affected.

Section two is in these words: "But no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest touching the property and rights of property aforesaid (viz.: of said bankrupt, transferable to or vested in the assignee), in any court whatever, unless the same shall be brought within two years from the time the cause of action accrued for or against such assignee." If the sheriff's levies and sales were valid, unless set aside by direct proceedings had for the purpose, then the causes of action may be said to have accrued at the date of the respective sheriff's deeds, and the bar of the act to be complete as to the first two sales, if the terms of the act are to be followed without regard to the ordinary statutory and equitable exceptions, making statutes commence to run in cases of fraud only from the date of the discovery thereof, or of knowledge or information of facts inducing a reasonable belief that a fraud has been perpetrated. Martin v. Smith [Case No. 9,164]. Whether section two is to be construed so as to admit such an exception, it is not now necessary to decide. The defendants were no parties to the Goodin fraud, and do not claim under the Goodin title. If that title be, as it has been adjudged, fraudulent and void, their title is in nowise affected thereby. The assignee not having discovered that fraud, had no reason for proceeding against the defendants unless that fraud existed; for the bankrupt's case could not be benefited by setting aside the sheriff's deeds. If those deeds are merely voidable at the option of the assignee, and he cannot maintain a suit to avoid them, after two years, then the fraud, so far as the bankrupt's estate is concerned, has effectively worked its purpose. It is, perhaps, wise that such a limitation should be made in order to compel a speedy settlement of the bankrupt's estate, and also to close the many vexing suits that might arise under sections thirty-five and thirty-nine after knowledge of the facts was lost. There should be as early an end to litigation as is consistent with the rights of parties.

It has been held that section two does not apply to ordinary money demands not barred by the statutes of limitation. Sedgwick v. Casey [Case No. 12,610]. But the full force and effect of that provi-

sion seem not to have been judicially determined. 5 N. B. R. 252 [Peiper v. Harmer, 8 Phila. 100]. It has, however, been held by the United States circuit court here, that the concurrent jurisdiction vested by that section in the circuit courts does not reach actions of assumpsit. It would seem, therefore, that the limitation is to be confined to controversies about property rights, or legal and equitable titles to property. What titles? Those existing at the date of proceedings in bankruptcy, or those supposed to have accrued subsequently? The assignee must unquestionably bring his suit against an adverse possessor or claimant—that is, adverse to the bankrupt originally—within the time specified. But how is it with regard to suits which the bankrupt could not maintain, but his creditors could, as under the statute of frauds and fraudulent conveyances, wherein the statute begins to run only from knowledge or information first had of the fraud? However that may be, the question still remains, does section two cover cases of fraudulent concealment of assets from the assignee? Is a fraud, successfully concealed for two years, to ripen into a valid title, or the assignee to be barred from unravelling it? Such questions may arise and have to be decided hereafter; but the present case has its solution in the legal rule which this court holds to be the true one under the bankrupt act, viz: That all liens, whether of judgments or mortgages, or by pledges, &c., must, after proceedings had in bankruptcy, be enforced solely through the intervention of proper bankrupt courts, and that a subsequent sale, whether under judgment or mortgage, without the consent of that court, is subject to be set aside by the bankrupt court. In no other way can the property, which is in its custody or under its control, be preserved for the equal benefit of creditors. Nor is this rule any more variant from those ordinarily governing litigation in state courts, than the direct provisions of the bankrupt act concerning new or pending suits against the bankrupt. If it be the supreme law within the purview of the constitutional grant concerning bankrupts, it overrides state statutes, not only as to assignments, preferences, &c., but also as to proceedings under insolvent and other conflicting laws, not as to the legal rules governing such transactions, but as to the forum where justiciable. On what legal theory do United States courts enjoin proceedings in state courts affecting the interest of bankrupt estates, if not on the theory that such questions should be determined exclusively in the bankrupt court or under its direction? The bankrupt act expressly provides that by its own operation attachments in the state courts, in prescribed cases, are dissolved and suspends all other suits in state courts against the bankrupt, except by leave of the court in bankruptcy, and when that leave is granted, the suit proceeds merely "for the purpose of ascertaining the amount due," but execution is stayed. In Re Kahley [Case No. 7,593], Hopkins, J., held: "Under sections one and twenty the bankrupt court has the right through its officers to take possession of the mortgaged property after a default in payment, and sell it free of the lien without first satisfying the lien, in which case the lien is transferred to the fund in court. It is a matter of discretion with the court to sell subject to or free from the encumbrance of the lien." He cites in support of his views, Houston v. Bank of New Orleans, 6 How. [47 U. S.] 846; Foster v. Ames [Case No. 4,965]; Ex parte Christy, 3 How. [44 U. S.] 308. And again in Re Cook & Gleason [Case No. 3,151], the same learned judge holds that the liens of mechanics and all others should be presented to and read by the bankruptcy court, and the parties claiming those liens have no right to proceed in such suits without first obtaining leave of the bankrupt court. In support of his view he cites Angel v. Smith, 9 Ves. 335, and Wiswall v. Sampson, 14 How. [55 U. S.] 52. He held further that parties who proceed in the state courts to enforce their lien demands without leave of the bankrupt court were guilty of contempt; that the principle is applicable to every interference with the possession of a receiver or custodian who holds property as an officer of the court, for his possession is in law the possession of the court itself. Edw. Rec. 129; 3 Paige, 199; 1 Hogan, 216; Madd. 406; 5 Paige, 489; [Peale v. Phipps] 14 How. [55 U. S.] 368; [Taylor v. Carryl] 20 How. [61 U. S.] 583. And therefore the bankrupt court was bound to insist upon its exclusive right to administer and distribute the bankrupt's property, and not permit anyone with impunity to interfere through state process with such property. In re Hanna [Case No. 6,026]; Swope v. Arnold [Id. 13,702]; Beers v. Place [Id. 1,233]; Shaffer v. Fritchery [Id. 12,697]. There are many other cases to the same effect, and this court has never hesitated to act upon the foregoing principles. The levy and sale by the sheriff under the executions named were in violation of the well settled rules governing these cases—an interference with property in the custody of this court—and therefore could give no right or title thereunder. Taylor v. Carryl, 20 How. [61 U. S.] 583. As between the assignee and the defendants, the title is still in the assignee. The defendant, William B. Anderson, is in no better position than his co-tenant in common and subsequent grantor.

The decree of the court will therefore be that said sheriff's deed be set aside, and held for naught; that the assignee proceed to sell said real estate free from all encumbrances, reserving to defendants the right to proceed against the fund for any demand they may have. If any question should arise concerning the residue of the fund, the court will determine it at the proper time and in the proper way.

To the case of Davis v. Campbell [12 Ind.

192], which has also been heard, the foregoing views apply, so far as the sheriff's deed is concerned.

The facts are that an execution on a prior judgment was issued and levy was made and sale was had after bankruptcy proceedings commenced; that the defendant, who was assignee of a mortgage, became the purchaser at the sheriff's sale; that his deed, it is contended, was filed for record before the assignment, although it appears from the clerk's certificate it was filed afterwards, and that Campbell had no actual notice of the proceedings in bankruptcy when he purchased. The lien demand of neither the judgment nor mortgage was ever presented to the bankrupt court, nor has any leave to proceed thereunder been granted. The property was sold for a sum far below its value. But in this case as the defendant is, perhaps, a mortgagee in possession, although his sheriff's title is valueless, the court will enter a decree to sell the property free from all encumbrances, reserving to the defendant the right to prove any demand he may have against the fund.

The following doctrines on this subject have been frequently held and have passed into some of the text-books as settled law: "The commencement of proceedings in bankruptcy operates as a supersedeas of all process in the hands of the officer of any other court, and as an injunction against all other proceedings than such as may afterwards be had under the authority of the court of bankruptcy until the case is closed. Thus the levy of an execution, or the filing of a bill to foreclose a mortgage, or the filing of a libel in rem, or the issuing of a distress warrant, or the filing of a mechanic's lien claim, where the lien only exists from the time of such filing, or the issuing of a writ of replevin for the purpose of affecting the estate, are null and void when such proceedings are instituted in any other court after that time. Claims against the bankrupt's property can only be enforced in the court of bankruptcy during the pendency of the proceedings, and this principle extends not only to liens, but to all controversies concerning even the title to property which was in his possession at the time of filing the petition."

The supreme court of Iowa in Stuart v. Hines [33 Iowa, 60], and several other cases passed upon at the same time, quote the foregoing, and add that the several cases cited in support of the doctrines thus laid down fully sustain the text. Indeed, as previously shown in this opinion, no other rules are consistent with the bankrupt act. And the custody of the property, the title being in the assignee as an officer of the court, cannot be divested except under the direction of the court. Hence some ill-considered opinions to the effect that the lien creditors may wait until bankruptcy proceedings are closed, and then enforce their liens through the state courts or under powers to sell, can have no

force. The assignee may cite in the secured creditor so as to determine what shall be done with respect to the security, and it may be advisable so to do, yet it is none the less the duty of the secured creditor to prove his demand and obtain the aid of the court for its enforcement. The court has jurisdiction over both the bankrupt debtor and all his creditors, and also over all demands affecting the bankrupt's estate. If the lien creditor does not act, and the property is sold by the assignee under the order of the court, free from all liens or encumbrances, what recourse is left to the creditor after the fund has been fully distributed? If he thus sleeps on his rights, he does so at his peril. The estate must not be left open indefinitely, to the detriment of all other creditors, because some secured creditor will not assert his rights as the law requires. It may even be a serious question whether, under the limitation in section two, he can proceed to prove his demand after the expiration of two years, and have the same enforced. Whether that section will admit of such a construction or not, it is certain that such a creditor may, through his own laches, like unsecured creditors failing to act, lose whatever right of property or interest he had in the bankrupt's estate. This court has held from the commencement, that secured creditors could not enforce their demands except through the bankrupt court, and has never hesitated to set aside sales made without its action after bankrupt proceedings were commenced. It has now given its views more at large than was necessary, without, however, citing the numerous authorities which support the various propositions stated. The bankrupt reports are full of cases, and the text-books refer to them with sufficient fullness.