1831.

L'Amoureux
v.
Crosby.

---

## L'AMOUREUX, committee of Stafford, vs. CROSBY.

Where the defendant, an inn-keeper, persisted in harboring an infant, and furnishing him with supplies against the will, and contrary to the express directions of his guardian, who was endeavoring to reform his dissipated habits, the court of chancery would not permit the defendant to retain the fruits of his improper conduct out of the estate of the infant.  And the defendant having obtained a judgment bond from the infant during his minority, and another a few days after he became of age, but which was overreached by an inquisition finding him incompetent to contract on account of habitual drunkenness, both judgments were decreed to be set aside and cancelled.

The statute gives the court of chancery the exclusive care and custody of the persons and estates of idiots, lunatics, and habitual drunkards; and all contracts made by them, and all gifts of their property or effects, after the actual finding of an inquisition declaring their incompetence, are actually void.

The inquisition is only prima facie evidence of the invalidity of an act done by the lunatic or drunkard before the issuing of the commission, but which is overreached by the finding of the jury.

It is a contempt of the court for a person to interfere with the property of a lunatic, &c. after he is informed of the institution of proceedings to declare his incompetency.

After the finding of an inquisition declaring the incompetency of the lunatic, &c. the proper remedy of creditors is by an application to the court, by petition, for the payment of their debts, if the committee decline discharging them without the direction of the court; and if their demands are disputed or doubtful, it may be referred to a master to ascertain whether they are equitably due.

It is not proper to subject the estate of the lunatic, &c. to the expense of a proceeding by bill against his committee, except by the direction of the court; and it is a contempt of the court to commence a suit at law without its permission.

The statute having given to the court of chancery the exclusive jurisdiction in such cases, and charged it with the duty of providing for the payment of the debts of the idiot, lunatic or drunkard, out of his estate, the chancellor will see that the legal and equitable rights of the creditors are protected and enforced. But this must be done according to the usual forms of proceedings in this court, or under its direction.

THE bill in this cause was filed to set aside two several judgments against John Stafford, entered up on bonds and warrants of attorney ; the one obtained while he was an infant, and the other after he had been found incapable of managing his estate by reason of habitual drunkenness. The facts are sufficiently stated in the opinion of the court, and in the preceding case of *Kline and others* v. *L'Amoureux.* (Vide ante, p. 419.)

*J. L'Amoureux,* in person. The several contracts, made by John Stafford and the defendant previous to the former arriving at the age of twenty-one, including the first judgment, were not binding on Stafford : 1st. Because he was an infant, and the articles furnished were not of the class called necessaries ; 2d. If all or any of the articles furnished Stafford were of the class called necessaries, still the contracts were not binding on him, as he had a faithful guardian who fully provided for him. The presumtion is in favor of the guardian until strong circumstances of suspicion are shown against him.

When Stafford confessed the second judgment his estate was so far in the custody of the law as to prevent its being affected by the acts of an individual ; especially when that individual acts with a full knowledge of all the facts.

The court of chancery is the general guardian of idiots, lunatics and habitual drunkards, and the general trustee of their property ; and when the court has signified *its intention* to take the charge of their persons and property by committing them to a guardian and committee, though it does not accomplish it in a given time, yet it will not suffer itself to be outdone by an individual. The act of the defendant in obtaining the second judgment was a contempt of the court.

It was found by the inquisition that Stafford had been incompetent to contract for two years. Of the finding of this

*1831.*

L'Amoureux
v.
Crosby.

June 21st.

1831.

L'Amoureux
v.
Crosby.

inquisition the defendant had notice. He aided in the opposition made to it. An inquisition found under such circumstances is, at least, prima facie evidence of the incapacity of Stafford to contract. If, however, Stafford was not entirely incompetent to contract and dispose of his property, at the time he confessed the second judgment, either on the ground of his property being in the custody of the law, or of the entire imbecility of his mind; yet, the second judgment, under the circumstances of this case, is void, it having been fraudulently obtained.

Fraud is divisible into four heads: 1st. Actual fraud, by suppressing the truth, or suggesting falsehood; 2d. That which is apparent from the intrinsic nature and subject of the agreement itself; 3d. That which arises from the circumstances and condition of the contracting parties; 4th. Fraud on creditors. (Newland on contracts, 352.)

The present case is one under the third head. The contracts with Stafford being highly immoral and unconscionable, the weakness of his mind furnishes the strongest evidence of fraud. Several principles have been settled which entitle us to the relief we ask. It has been held that where an unconscientious advantage has been taken of the situation of a person, although not fraud in contemplation of law, chancery will relieve. (Lyon et al. v. Tallmadge et al. on appeal, 14 John. R. 501.) So a court of chancery will recognize an imbecile state of the human mind which is short of idiocy or lunacy. (In the matter of J. Barker, 2 John. Ch. R. 232.) And weakness of understanding is an item in the proof of fraud, against which a court of equity will relieve, when it can be collected from the circumstances, (Jackson v. King, 4 Cowen's R. 207.) And where an infant has been unwarily entrapped, immediately on coming of age, into a ratification of his acts while an infant, equity will relieve him from such ratification. (Bingham on infancy, 69. Brook v. Gally, 2 Atk. 34. 2 Starkie, 723. 2 Mad. Ch. R. 753.) Fraud at law must be proved, but in equity it may be presumed. A lunatic may, or may not be made a party in a suit, to avoid his acts before inquisition found. (In the matter of Hallock, 7 John. Ch. R. 24.)

1831.

L'Amoureux
v.
Crosby.

*J. V. N. Yates*, for the defendant, contended, 1st. That John Stafford, after he became twenty-one, and before any committee was appointed for him, ratified and confirmed the debt due to the defendant ; 2d. That he was not incapable to do so, by reason of mental imbecility, or of drunkenness ; 3d. That the debt due the defendant was moderate in amount ; (about $400 only ;) that not one eighth part of it was for liquor ; that John's estate was large, and the defendant's claim, so far from being large, or extravagant, was the reverse; 4th. That the complainant, by filing the bill, and persevering therein to the hearing of this cause, has exhibited a greater disregard of the interests of John, and has committed a greater waste of his property, than that which he professes to prevent ; 5th. That he ought to pay defendant's costs out of his own pocket: or, 6th. Out of the funds or estate of John. In support of these positions he cited the following cases : *Tiernan* v. *Wilson*, 6 John. Ch. R. 411 ; 3 Bac. Abr. 611 ; 2 Str. 690 ; *Borthwick* v. *Carruthers*, 1 Durn. & East, 648 ; Abr. Eq. 282 ; High. on Lun. 106, 111. 115, 118, 119, 181.

The counsel also insisted that the case in *Brook* v. *Gally*, (2 Atk. 34,) had no analogy; that there the infant had seven shillings sterling a week, pocket money, (nearly two dollars ;) here he had scarcely any ; that there the infant went to school, and the tavern keeper often concealed and denied him ; not so here. And that even in that case the court allowed a suit at law to be brought, to try the question of consideration.

THE CHANCELLOR. In the case of *Kline and others* v. *L'Amoureux*, which has just been decided, the facts as to this young man, and the law in relation to contracts made with an infant under such circumstances, are fully stated. It is therefore unnecessary again to repeat what was said in that case. There are, however, in this case some facts which require particular comment. It appears by the testimony of the guardian that soon after his appointment he called upon the defendant, in a friendly manner, and informed him of the appointment; and stated to him that he provided every thing necessary for the infant, and permitted him neither to buy nor sell.

He also requested of the defendant, as a particular favor, that he would neither harbor nor trust his ward. Nothwithstanding this friendly admonition of the guardian, and his subsequent remonstrances, the defendant persisted in harboring and furnishing the infant with supplies; and by this course of conduct he probably contributed as much as any other person to the absolute ruin of this unfortunate young man. Under such circumstances it is not material to go into the enquiry, which was objected to on the examination of the witness, whether he was not in the habit of seducing minors, and drawing them into haunts of vice and intemperance, for the purpose of afterwards defrauding them of their property. His conduct in harboring and trading with the infant, in defiance of the rights of the guardian, would have been sufficient to have induced the English court of chancery to commit him to the Fleet prison. And it is sufficient here to make it the duty of this court to deprive him of the fruits of his illegal and improper conduct, unless there is some unbending rule of law which prevents the exercise of the power. It therefore remains to be seen whether the complainant is entitled to the relief sought by his bill.

The first judgment bond was obtained from Stafford during his infancy, and to cover an account for articles which never were of the least possible benefit to him or to his estate. It is also overreached by the inquisition, found by one of the most respectable juries that could be selected in the city of Albany, under the advice and direction of a most able and competent board of commissioners. By the inquisition it is found that, at the time of the execution of that bond and warrant, Stafford, in addition to the disability arising from his infancy, was incompetent and unfit for the government of himself or his estate in consequence of habitual drunkenness. Although this finding is not conclusive evidence against the defendant, who has neglected to traverse the inquisition; yet, in connection with the other testimony in the cause, it is sufficient to satisfy me that the judgment could not be sustained, even if Stafford had been of full age at the time that bond and warrant were executed. The same remarks are applicable to the second judgment. But as to that there is an-

1831.

L'Amoureux
v.
Crosby.

other insuperable objection. When the last bond and warrant were executed this court had obtained complete jurisdiction and control over the property of Stafford, not only by the *lis pendens* which was created by presenting the petition for a commission, but by the actual finding of an inquisition declaring him incompetent to manage his estate. The statute gives this court the exclusive care and custody of the persons and estates of all idiots and lunatics. By the act of March 16th, 1821, which was in force when these proceedings were instituted, the same jurisdiction was conferred as to the estates of habitual drunkards; and by the revised statutes the same authority is extended to their persons also. The inquisition under the commission of this court is in the nature of an inquest of office at the common law. As to acts done by the lunatic or drunkard before the issuing of the commission and which are overreached by the retrospective finding of the jury, the inquisition is only presumptive but not conclusive evidence of incapacity. But all gifts of the goods and chattels of the idiot, lunatic or drunkard, and all bonds or other contracts made by him after the actual finding of the inquisition declaring his incompetency, and until he is permitted to assume the control of his property by the permission of the court are utterly void. This doctrine is fully stated in *Beverly's case*, ( 4 Coke's R. 126, b. 127, a. ) The same opinion is intimated by the supreme court of Massachussetts, in *White* v. *Palmer*, ( 4 Mass. R. 147. ) Although that court afterwards decided that a lunatic restored to his reason might make a valid will, even if there had been no formal revocation of the letter of guardianship, they conceded that the finding of the judge of probates was evidence of incompetency at the time his decree was made. Here the defendant admits that he took this last bond and warrant two days after the jury had found Stafford incompetent to contract; and with a full knowledge of all the circumstances. It was therefore an unwarrantable interference with the proceedings and powers of this court to attempt to get a judgment by confession against him, and to seize upon his property by an execution at law, without the permission of the chancellor. And probably if the court had been applied to in a

summary way, the defendant would have been punished for the contempt and compelled to discharge the judgment. It is a contempt of this court even to commence a suit at law against the lunatic, without permission, after notice of the inquisition declaring his incompetency. (See *Sweet and wife v. Austin,* Vern. & Scriv. R. 306.) If any person has a legal or equitable claim against him or his estate, the proper course is to apply to this court by petition for the payment thereof; and if the claim is disputed or doubtful, it may be referred to a master to ascertain the facts. It is not proper even to subject the estate to the expense of a proceeding by bill, except by the direction of the court. The statute having given to this court exclusive jurisdiction in such cases, and charged with the duty of providing for the support of the lunatic and his family, and for the payment of his debts out of the estate, the chancellor will see that the legal and equitable rights of the creditors are protected and enforced. But this must be done according to the usual forms of proceeding in this court, or by suits instituted under its direction. None of the creditors will be permitted to take the law into their own hands and mete out justice to themselves according to their own ideas of their equitable rights.

Under the circumstances of this case, I am satisfied that the defendant has no legal or equitable claim to be paid out of the estate of this young man for the means he has furnished towards his ruin. There must therefore be a decree, in favor of the complainant, declaring the bonds and warrants on which these judgments were entered to have been imroperly and inequitably obtained from Stafford, without any beneficial or sufficient consideration; and while he was legally incompetent to make any valid contract, affecting his estate. The defendant must cancel the judgments on record. The injunction heretofore issued, and continued by the decision of the late chancellor, prohibiting all proceedings at law on those judgments against the estate of Stafford, must be made perpetual; and the defendant must pay to the complainant the costs of this suit to be taxed.