Griswold *v.* Miller.

———————•◦•———————

## GRISWOLD *vs.* MILLER.

Where a person purchased real estate, and took a conveyance thereof, with full knowledge that proceedings had been instituted in the court of chancery, against the grantor, as an habitual drunkard; that a commission had been issued to inquire as to his incapacity to manage his affairs; and that the sheriff was then summoning a jury to try such inquisition, the conveyance was set aside, with costs, on a bill filed by the committee of the person and estate of the habitual drunkard.

Actual notice to a purchaser, of a *lis pendens* affecting the property purchased, arrests all further proceedings towards the completion of the purchase and payment of the purchase money; and if the purchase is persisted in, it will be held to be fraudulent.

IN EQUITY. This was an appeal from a decree of the vice chancellor of the sixth circuit, dismissing the complainant's bill with costs. On the 13th day of January, 1835, a commission was duly issued to the complainant to inquire whether George Miller was incapable of conducting his own affairs in consequence of habitual drunkenness, and on the 29th day of April, 1835, an inquisition was duly had whereby it was determined that the said George Miller was so incapable, and had been thus incapable for three years preceding that time. On the 28th day of April, 1835, the day previous to the taking of said inquisition, the defendant Edmund Miller, with knowledge of the issuing of the commission, purchased the real estate described in the bill

Griswold *v.* Miller.

of complaint, of the said George Miller, and took a deed thereof. The complainant was appointed committee of the person and estate of the said George Miller, on the 24th day of December, 1835. The bill in this cause was filed on the 20th day of June, 1836, by the complainant as such committee, to set aside the conveyance executed by the said George Miller to the defendant. The remaining facts are sufficiently stated in the opinion of the court.

*Diven, Hathaway & Woods,* for the complainant.

*D. S. Dickinson,* for the defendant.

*By the Court,* MASON, J. It is not important to consider in this case the issues found by the jury, or the evidence given upon the trial, for the answer of the defendant furnishes a perfect case against him, requiring this court to set aside the conveyance from George Miller to him. The answer of the defendant admits that on the 28th day of April, 1835, the day previous to the taking of the inquisition, the defendant, with full knowledge that a commission or some proceedings had been issued to the complainant to inquire whether the said George Miller was incapable of conducting his own affairs by reason of habitual drunkenness, and that a notice in writing had been given to the said George Miller, signed by the complainant and served by Edward B. Tuttle, of the time, place and object of holding said inquisition, which said notice was seen by the defendant, but the particular contents of which he did not recollect at the time of putting in his answer; and while the sheriff was summoning the jury by whom the said inquisition was made, the defendant did bargain and purchase of Miller the said real state, and took a conveyance thereof from Miller, and gave back a mortgage to secure the purchase money, after deducting certain incumbrances upon the said land, which the defendant assumed to pay. No one can read the answer in this case without being satisfied that the defendant purchased the property in question and received his conveyance with full knowledge that proceedings had

been instituted against George Miller, and that a commission had actually issued out of the court of chancery to inquire as to his incapacity to manage his affairs in consequence of habitual drunkenness, and that the sheriff was then summoning a jury to try such inquisition. Such being the plain and clear admissions of the answer of the defendant in this case, it is not important to examine the evidence or the issues found by the jury; for where a defendant in chancery admits the allegations of the bill, proof even contradicting such admitted allegations is utterly unavailing. (*Bright* v. *Wayle,* 3 *Dana,* 256.) In the absence of all proof upon the subject, the filing of the petition in the proceeding against George Miller, and issuing of the writ *de lunatico inquirendo,* would be a constructive notice to the defendant as a purchaser of this property *pendente lite.* (1 *Story's Eq. Jur.* §§ 405, 406, 407. *Fonb. Eq. b.* 2, *ch.* 6, § 3, *n.* 152. 1 *John. Ch. R.* 576, 581. 2 *Id.* 156, 159. 1 *Wend.* 485. 2 *Sugden on Vend.* 323 *to* 327. 7 *Wend.* 152. 11 *Id.* 442. 2 *Sandf. Ch. R.* 70. 11 *Ves.* 194.) The rule of *lis pendens* proceeds upon the ground that every man is presumed to be attentive to what passes in a sovereign court of justice. (*Fonb. Eq. b,* 2, *ch.* 6, § 3. 2 *P. Wms.* 482. 3 *Atk.* 392. *Amb.* 676. 1 *Stor. Eq. Jur.* § 405.) And the established rule is that a *lis pendens,* duly prosecuted and not collusive, is notice to a purchaser, so as to affect and bind his interest by the decree. (*Fonb. Eq. b.* 2, *ch.* 6, § 3. 1 *John. Ch. R.* 576. 2 *Sandf. Ch.* 70, *and cases above cited.*) And the *lis pendens* is deemed to commence, in ordinary suits in equity, from the service of the subpœna. (1 *John. Ch.* 566. 2 *Id.* 158.) When, however, the defendant is only charged with constructive notice of the suit, there is no real fraud in the case; and although his purchase is affected by the decree, and cannot be permitted to stand, there is equity in not carrying the doctrine of such cases so far as to charge him with costs. (*Murray* v. *Ballou,* 1 *John. Ch.* 582.) The rule is different, however, where the purchaser has actual notice of the pending suit affecting the property purchased. After actual notice is brought home to him, it arrests all further proceedings towards the completion of the purchase and payment, and if per-

sisted in, the purchase is held to be fraudulent. (*Wigg* v. *Wigg*, 1 *Atkins*, 384. 2 *Id.* 360. 1 *P. Wms.* 306. 1 *John. Ch.* 300. *Heatley* v. *Finster*, 2 *Id.* 158.) I have no doubt but this well settled principle of equity jurisprudence is applicable to the case under consideration. An inquisition of lunacy, so far as the property of the lunatic is concerned, is said to be a proceeding *in rem*, and hence the inquisition is received as evidence against one who is not a party to the suit. (*Hart* v. *Deamer*, 6 *Wend.* 497. 1 *Stark. Ev.* 241.) When the conveyance in question was made to the defendant, this court had obtained complete jurisdiction and control over the property of George Miller by the *lis pendens* which was created by presenting the petition for a commission and the granting of such commission, and the subsequent prosecution of the proceedings thereon. (2 *Paige*, 427.) The rule seems to be well settled, that on a bill filed to set aside a conveyance on the ground of the lunacy of the party at the time he executed the conveyance, the finding of a jury on an inquisition which overreached that period is *prima facie* evidence of his incapacity. (*Frank* v. *Mainwaring*, 2 *Beav.* 115. 17 *Eng. Ch. Rep.* 116. *L'Amoureux* v. *Crosby*, 2 *Paige*, 427.) And indeed the rule seems to be well settled that such inquisition of incapacity is admissible in evidence, and is *prima facie* evidence of incompetency, even as against strangers to the proceedings, who had no opportunity to contest the issue on the proceedings. (3 *Hill*, 513. 6 *Wend.* 497. 2 *Cowen & Hill's Notes*, 942. *Shelf. on Lun.* 63 to 66. 8 *C. & P.* 679. 6 *Barr*, 371. 4 *Mass. R.* 146, 7. 2 *Paige*, 427. 8 *Co. R.* 126.) There is no doubt in the case under consideration, as the defendant purchased the property in question with a full knowledge of the issuing of the writ *de lunatico inquirendo* and while the sheriff was summoning the jury to try that issue, that his title cannot be allowed to stand, as well for the reasons above stated, as for the reason that such purchase is a fraud upon the proceedings of the court of chancery, which court had already acquired jurisdiction over the property of this habitual drunkard, and whose custody the law had committed to that court. It was an unwarrantable interference with the

proceedings and powers of that court thus to meddle with the property of its ward, and I think it is not characterizing the transaction too strongly to say that it was a fraud upon the proceedings in that court, and one which this court should at least punish by setting aside this conveyance, with the costs of the suit. The decree of the vice chancellor, therefore, must be reversed, with costs of the appeal, to the appellant, and a decree entered for the complainant setting aside the conveyance from George Miller to the defendant, with the costs of suit to be taxed; and the defendant must account for the rents, use and occupation of the premises while they were possessed or held by him, or others under him. And if the defendant has paid any thing towards the lands, which I do not understand from the evidence that he has, then the same is to be repaid to him by the complainant, out of the estate of the habitual drunkard. So if the defendant has paid any thing upon the incumbrances on said lands, then the same is to be repaid to him by the complainant; and unless the parties can otherwise agree, a reference must be had to inquire and report both as to said rents and as to the moneys paid by the defendant; and the mortgage executed by the defendant to George Miller must be cancelled and given up.

[Tompkins General Term, September 2, 1851. *Shankland, Monson* and *Mason*, Justices.]