HORACE H. HICKS AND ANOTHER, PLAINTIFFS, v. GEORGE C. MARSHALL, AND JOHN BOYER, COMMITTEE, ETC., OF GEORGE C. MARSHALL, DEFENDANTS.

*Inquisition — prima facie evidence of unsound mind — Promissory note made by lunatic — action upon — burden of proof in.*

This action was brought by the plaintiffs against the maker of a promissory note, which they had purchased, before maturity, in good faith, and for full value. Upon the trial the proceedings upon an inquisition, had after the making of the note and the commencement of this action, were given in evidence, by which the defendant was declared to be of unsound mind at the time he made the same. *Held*, that the inquisition established, *prima facie*, the insanity of the defendant at the time of the making of the note, and that, in order to recover, the plaintiffs must show either that he was sane at that time, or that he had received such a consideration for the note as that justice and equity required it to be paid out of his estate.

MOTION for a new trial upon exceptions ordered to be heard in the first instance at the General Term, after a verdict in favor of the plaintiffs.

The action was brought upon a promissory note executed by Marshall to one Hunt, and by him indorsed to plaintiff.

*W. W. Hare*, for the plaintiffs.

*H. A. Maynard*, for the defendants.

BOARDMAN, J. :

This action was originally brought against Marshall upon his promissory note for $250. Marshall put in an answer. Sometime afterward, by proceedings duly had, Marshall was declared to be a person " of unsound mind, and for that cause is incapable of the government of himself or the management of his affairs * * * and that he has been in that same state for one year and a-half past; that he has, during the last seven years, on several occasions, been afflicted with mental alienation." The inquisition is dated March 2, 1874, and the note sued upon is dated June 18, 1873. Boyer was duly appointed committee. On the 4th of August, 1874, by order of the court, Boyer was made a party defendant, with leave to put in a supplemental answer setting up Marshall's unsoundness of mind as a defense. This was done.

Upon the trial, the note was read in evidence. A stipulation was also read, to the effect that plaintiffs purchased said note before it became due, paid full value therefor, and are *bona fide* holders thereof; that they had no knowledge of the consideration of the note, and did not know defendant, nor of him, except that he was a farmer and reputed to be good. The plaintiffs then rested. The defendants then gave in evidence the proceedings on the inquisition, and appointment of Boyer as committee, and rested.

The defendants, by various requests, asked the court to hold and decide that, upon the evidence given, a defense was established, and a verdict should be given to the defendants. This was refused, and a verdict was ordered for the plaintiffs for the amount of the note and interest. It is alleged that such decisions of the court were erroneous, and therefore a new trial should be had.

This court is called upon to determine whether the inquisition so put in evidence constituted a legal defense to the action.

Persons of unsound mind are not necessarily relieved from the obligation of their contracts. When they or their estates have been benefited by their contracts, they will be held liable. A person dealing with them under such circumstances, in good faith, without fraud and without notice of any mental unsoundness, may create a valid claim. (2 Kent, 451, note 6.) Still, upon the appearance of incapacity it is in the discretion of a court of equity, upon the facts shown, to order the debt paid or not, as shall seem just. In this case there is no evidence what the consideration of the note was; it is therefore presumptively good and valid in the absence of the inquisition. If the note was given for money lent, or property purchased, whereby defendant's estate was increased and benefited, equity would compel its payment. The inquisition has found Marshall of unsound mind; it does not follow that he should not pay his debts honestly contracted prior to that date, though the inquisition overreached the time when the debts were created. If it be shown that he was cheated, defrauded or taken advantage of, the courts will be very ready to protect him and his estate from the consequences thereof.

In this case the plaintiffs' cause of action was complete when it was begun. They were *bona fide* purchasers for full value, and before the maturity of the note in suit. Did the inquisition, after-

ward taken without their knowledge, and to which they were not parties, destroy the plaintiffs' rights, or were the defendants bound to go further, and attack the consideration or the *bona fides* of the plaintiffs? (1 Pars. on Notes, 276.) I apprehend the supplemental answer, and the order allowing Boyer to be made a defendant and put in such answer, is equivalent to permission by the court that the validity of plaintiffs' claim might be tested at law, and that the committee should be permitted to take care of Marshall's rights during the litigation. In the discharge of this duty the defendants have seen fit to rest the case upon the findings of the inquisition. It is insisted that such evidence is sufficient to defeat plaintiff's action. It is the only evidence touching Marshall's mental condition. Such evidence is not conclusive; it may be rebutted, but until it is overthrown, it will constitute *prima facie* evidence of the fact. (*Sergeson* v. *Sealey*, 2 Atk., 412.) Such I understand is the settled doctrine of our courts. Judge BRONSON says, in *Osterhout* v. *Shoemaker* (3 Hill, 516): "I see no principle upon which the inquisition taken upon a commission of lunacy can be given in evidence to defeat the rights of third persons who were strangers to the proceedings. * * * But it seems to be settled that such evidence is admissible though not conclusive." *Hart* v. *Deamer* (6 Wend., 497), is also directly in point, the inquisition having been taken after the date of the contract and overreaching it. (*Sergeson* v. *Sealey*, 2 Atk., 412.) In *Goodell* v. *Harrington* (3 N. Y. S. C., 345), it is held that an inquisition is *prima facie* evidence of defendant's insanity before the contract made, and the burden was cast on plaintiff to show the contract was made during lucid intervals, or that the inquisition was erroneous. (See, also *Hoyt* v. *Adee*, 3 Lans., 173; *Van Deusen* v. *Sweet*, 51 N. Y., 378, 386; *Griswold* v. *Miller*, 15 Barb., 523.)

From these authorities, it follows that the inquisition was competent evidence to establish the mental incompetency of Marshall, at the time he signed the note; that being so, the burden of proof was thrown upon the plaintiff to overcome the presumption arising from the findings of the inquisition, and to establish the mental competency of Marshall at the time the note was made.

The case of *Lancaster Co. Nat. Bank* v. *Moore* (12 Alb. Law

Jour., 185), is relied upon by the plaintiff, but in that case the action was sustained, upon the principle that the money obtained by the defendant from the plaintiff was in the nature of necessaries, and was applied to the payment of his debts; the consideration was presumptively good, and beneficial to the defendant's estate. In the case under consideration we have, upon the evidence, a defendant incapable of making a valid note at the date of the note in suit; we are not informed of the consideration for which the note was given. Under such facts, we think courts ought not to presume the adequacy of the consideration in order to sustain this judgment against the lunatic. I understand this action is now pending in effect against George C. Marshall alone, because the committee cannot be sued at law. That the committee is permitted to attend to the defense of Marshall, and by the answer interposed is so doing; that the action is being prosecuted for the information of the court, and to determine whether the plaintiffs' claim is founded in justice, and ought to be paid out of the defendant's estate; that a recovery is founded, first, upon the sanity of the defendant when the note was given, but even if then insane, a recovery may still be had if the consideration moving to the defendant was of that nature which justice and equity require to be paid. When the defendant rested the burden of proof was on plaintiffs, to show the nature and fairness of the transaction and sufficiency of the consideration. The presumption arising from the possession of the defendant's note is overcome by the findings of the inquisition. Unless the plaintiffs show the defendant sane when the note was executed, or that the consideration was such as should be upheld in equity, the defendant would be entitled to a verdict upon the *prima facie* defense established by proof of the inquisition.

In other words, this trial is for the information of the court, and by its results the future action of the court will probably be governed; but in no view, as I understand the law, can a verdict be allowed against Boyer, the committee; he is an officer of the court, and acts only through its orders; an action begun against the committee would be in contempt of the court.

For the reasons given, I think the verdict should be set aside and a new trial granted, costs to abide the event.

LEARNED, P. J. (dissenting):

The following facts were proved and not disputed: The plaintiffs were *bona fide* holders, for full value, of a negotiable promissory note, made by Marshall and transferred to them, before it was payable. They had no knowledge of Marshall's alleged lunacy. After the note was due, and after this action had been commenced, and after Marshall had put in a verified answer, not averring lunacy, proceedings in the nature of a writ *de lunatico* were had, and Marshall was declared to be a lunatic, and to have been a lunatic for a year and a-half previous. This time included the date of the note. No other fact was proved. There was then no question for the jury. The court directed a verdict for the plaintiff. The defendants appeal. If the court was in error, then it follows that the verdict should have been directed for the defendants.

We have then this question: When a negotiable promissory note is made by a person, against whom no proceedings *de lunatico* have been taken, and that note, before it is payable, has passed into the hands of a *bona fide* holder, for full value, who has no knowledge of the maker's alleged lunacy, is proof of such lunacy, without any proof of the payee's knowledge of the same, and without any proof of fraud upon the maker, a defense to the note? I think it is not.

In *Brown* v. *Joddrell* (1 Moo. & M., 105), it is said: "The defense (of lunacy) will not avail *unless it be shown* that the plaintiff imposed on the defendant."

In *Dana* v. *Lady Kirkwall* (8 C. & P., 679): "It is not enough that Lady Kirkwall was of unsound mind, you must be satisfied that the plaintiff knew it and took advantage of it."

In *Molton* v. *Camroux* (2 Exch., 487; affirmed 4 id., 17), it is said that where a person, apparently of sound mind and not known to be otherwise, enters into a contract which is *bona fide* and which is executed and completed, and the property which is the subject of the contract cannot be restored so as to put the parties *in statu quo*, the contract cannot be set aside for alleged lunacy. (To the same effect, *Baxter* v. *Portsmouth*, 5 B. & C., 170.)

In *Elliot* v. *Ince* (7 De G., M. & G., 475), the chancellor said: "The result of the authorities seems to be, that dealings of sale and purchase by a person apparently sane, though subsequently

proved to be insane, will not be set aside against those who have dealt with him on the faith of his being a person of competent understanding."

The same doctrine may be found in the courts of this country. "No contract," say the court in *Young* v. *Stevens* (48 N. H., 133), "can be rescinded, until both can be restored to the condition in which they were before the contract was made."

In *Beals* v. *See* (10 Penn. State, 56), it was decided that an executed contract by a merchant, for the purchase of goods, is not avoided by proof of lunacy, unless there was fraud by the vendor, or knowledge of the lunatic's condition.

The court cites the familiar doctrine that, when one of two innocent parties must suffer, the loss should fall on him by whose act it is occasioned. This was not a purchase of necessaries.

In *Lancaster Co. Bank* v. *Moore* (12 Alb. Law Jour., 185), a case in the same State, the plaintiff was allowed to recover upon the note of the defendant, who had been adjudged a lunatic. The court say : "The bank had, in good faith, loaned the money ; the contract was executed, so far as the consideration is concerned; it would be derogatory to law and good morals that the defendant should be allowed to retain the money."

In *Behren* v. *McKenzie* (23 Iowa, 343), an action was brought upon an injunction bond, which, of course, was not an action for "necessaries." This was held to be an executed contract, and the plaintiff recovered. And the court say : "But, with respect to executed contracts, the tendency of modern decisions is to hold them (persons of unsound mind) liable in cases where the transaction is in the ordinary course of business, is fair and reasonable, and the mental condition was not known to the other party, and the parties cannot be put *in statu quo.*"

In the present case there is no evidence that the payee, Hunt, knew or suspected Marshall to be a lunatic. It is positively proved that the plaintiffs knew nothing of his lunacy. The parties cannot be put *in statu quo*, because the plaintiffs have paid their money to Hunt, the payee of the note.

This is the case of an executed contract. The note recites, and is *prima facie* evidence of a good consideration, received by the maker. (Edwards Prom. Notes, 56.) Indeed, as to *bona fide* hold-

ers, like the plaintiffs, it is conclusive evidence, as a general rule, of such good consideration. On the proof as it stands, Marshall must be presumed to have received a good or valuable consideration. His lunacy is no evidence to the contrary. The plaintiffs are entirely without fault. Even if Marshall be equally innocent (which is the most favorable supposition for him), yet it is his act which occasioned the loss, and, on that ground, he should bear it.

But, in order to defeat the plaintiffs, we must presume that Marshall received nothing; or, at least, must presume that Hunt knew that Marshall was a lunatic; and not only this, but further, we must presume that Hunt defrauded him. This is to reverse the rule that fraud is not to be presumed.

It will be seen, by several of the cases above cited, that the liability of the lunatic is not confined to an indebtedness for necessaries. (See, also, *Campbell* v. *Hooper*, 3 Sm. & G., 153.) And therefore it is not necessary for the plaintiffs to show that the debt was contracted for that cause.

In 1 Parsons on Bills, 150, it is said, on the authority of *Sentance* v. *Poole* (3 C. & P., 1), that the note of one, known to the payee to be insane, is void, even in the hands of a *bona fide* holder. The case cited hardly goes to that extent. But there is no evidence in the present case that Hunt knew or suspected Marshall's lunacy. In the absence of all proof on the subject, it is a reasonable presumption that no man is suspected of lunacy by those who deal with him, prior to the taking of proceedings *de lunatico.*

The innocent holders of negotiable paper are, I think, entitled to the benefit of that presumption. They have a right to call on the defendant, before he can successfully defend this action, to show not merely his lunacy, but Hunt's knowledge or suspicion of it, and the fraud, if any, practiced upon him. If he was not defrauded, he ought to pay.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

New trial granted, costs to abide event.