## In Equity.

PHILADELPHIA TRUST, SAFE AND DEPOSIT INSURANCE COMPANY et al.

*vs.*

IRENE C. ALLISON,

Executrix of the Will of William C. Allison, Deceased.

Hancock.    Opinion August 3, 1911.

*Drunkards. Capacity to Consent to Sale of Trust Property. Jurisdiction of Courts. Conveyance by Trustee. Consent by Committee. Courts. Extra-Territorial Jurisdiction. Marketable Title. Constitution of Pennsylvania, Article 5.*

By the terms of a trust deed, the trustee, which is the plaintiff in this case, was empowered to sell in fee simple or otherwise, the real estate thereby conveyed to it, but it was provided that certain real estate in Bar Harbor in this State should be subject to sale or rent only with the consent of the cestui que trust, and should be sold or rented by the trustee at any time upon the request of the cestui que trust, and for a price or sum acceptable to her. All the parties to the deed, as well as the cestui que trust, were, and still remain, residents of Philadelphia.

After the execution and delivery of the trust deed, the cestui que trust was adjudged, by the Court of Common Pleas of Philadelphia to be an habitual drunkard, and a committee of her person and estate was appointed by that court.

Afterwards, the plaintiff, as trustee, and the committee, so appointed, entered into a written agreement with one Allison, for the sale and conveyance to him, of the Bar Harbor property, and it was stipulated in the agreement that the title was to be good and marketable. The defendant is the executrix of Allison's will.

On petition of the committee, the Court of Common Pleas of Philadelphia made an order approving the sale and authorizing the committee to consent formally to the sale in behalf of his ward, the cestui que trust, and to join in the deed. The cestui que trust herself joined in the prayer of the petition, and formally assented to the making of the order.

A deed executed by the plaintiff as trustee, and consented to by the committee was seasonably tendered to Mr. Allison, who refused to accept it and pay according to the terms of his agreement to purchase.

This bill being brought to compel specific performance, it is *held :* —

1.  That the cestui que trust, by reason of having been adjudged an habitual drunkard, and the appointment of a committee of her person and estate, was incapable of giving consent personally.

2.  That under the constitution and statutes of Pennsylvania, as interpreted by the highest Court in Pennsylvania, the Court of Common Pleas of Philadelphia had jurisdiction to adjudge the cestui que trust to be an habitual drunkard, and to appoint a committee of her person and estate, and that that court having chancery powers, had jurisdiction to authorize the committee to consent to a conveyance by the trustee, for and in the place of his ward, and that the consent of the committee was as effectual, as if the consent had been given by the cestui que trust personally, while she was capable of so doing.

3.  That the decree of the Court of Common Pleas of Philadelphia was effectual, although the land to be conveyed was in Maine.

4.  That the deed tendered conveyed a good and marketable title to the Bar Harbor property.

In equity. On report. Bill sustained. Specific performance ordered.

Bill in equity praying for the specific performance of the written agreement of the defendant's testate, William C. Allison, to purchase and take a conveyance of certain real estate situate in Bar Harbor. The defendant demurred and answered. Reported to the Law Court on bill, answer and proofs, for determination and final judgment.

The case is stated in the opinion.

*Symonds, Snow, Cook & Hutchinson,* for plaintiffs.

*E. B. Mears, and Deasy & Lynam,* for defendant.

Sitting : Whitehouse, C. J., Savage, Spear, Cornish, Bird, JJ.

Savage, J. Bill in equity praying for the specific performance of the agreement of William C. Allison to purchase and take a conveyance of certain real estate situated in Bar Harbor, in this State. The case is reported to the Law Court on bill, answer and proofs for its determination and final judgment. The present defendant is the executrix of the will of William C. Allison.

Omitting unimportant allegations, the bill shows and it is admitted or proved that on November 3, 1905, William C. Allison,

of Philadelphia, in accordance with a previous written agreement between himself and his wife, Lenore M. Allison, dated October 24, 1905, executed and delivered to the Philadelphia Trust, Safe Deposit and Insurance Company, a deed of trust, for the benefit of Lenore M. Allison, for life, with remainder over to such person or persons as Mrs. Allison should appoint by will or other written instrument, or in default of such appointment, to her next of kin. In that trust deed it was stipulated that the trustee should have full power "to sell in fee simple or otherwise the real estate thereafter to be conveyed to it, under and in accordance with the provisions of the agreement of October 24, 1905," and reinvest the proceeds, but it was provided "that the said cottage at Bar Harbor, Maine, should be subject to sale or rent by the said trustee only with the consent of the said Lenore M. Allison, and should be sold or rented by said trustee at any time upon her request, and for a price or sum acceptable to her." The agreement of October 24, 1905, between Mr. and Mrs. Allison, contained a similar stipulation. The "cottage at Bar Harbor" is the subject of the present controversy.

It appears that afterwards, on December 9, 1905, and in accordance with their previous agreement of October 24, 1905, referred to in the trust deed, Mr. and Mrs. Allison conveyed the Bar Harbor property to the plaintiff Trust Company in trust for the purposes and uses set forth in the deed of trust, for the benefit of Mrs. Allison for life, with remainder over, as already stated.

It appears that Mrs. Allison was divorced from her husband in 1907. It also appears that afterwards, in the same year, by virtue of proceedings instituted in the Court of Common Pleas for the county of Philadelphia, in which county Mrs. Allison resided, she was "duly declared" by that court to be an habitual drunkard, and the court appointed George F. Pettinos a committee of her person and estate. Mr. Pettinos joins in this bill as a party plaintiff.

Afterwards, on May 27, 1909, the plaintiff Trust Company, as trustee, and Mr. Pettinos, as committee of the person and estate of Mrs. Allison, entered into a written agreement with the defendant's testator, for the sale and conveyance to him by the Trust Company, with the consent of the committee, of the Bar Harbor

property.   The agreement contained the stipulation that "the title is to be good and marketable."

Subsequently, on petition of Mr. Pettinos, the committee, the Court of Common Pleas of Philadelphia, which had appointed him, made an order approving the sale, and authorizing Mr. Pettinos, as committee, "to formally consent thereto on behalf of the said Lenore M. Allison, and to join therein."   Mrs. Allison joined in the prayer of the petition and consented, so far as she had legal capacity to do so, to the making of the order.   Under this order, Mr. Pettinos, as committee, and for and in behalf of Mrs. Allison, formally consented to the sale and conveyance, as a compliance with the provisions relating to the consent of Mrs. Allison, contained in the agreement of October 24, 1905, and in the trust deed.

A deed executed by the Trust Company and consented to by Mr. Pettinos, as committee, was seasonably tendered to the defendant's testator, who refused to accept it and pay according to the terms of the agreement.   And this bill is brought to compel specific performance of his agreement to purchase.

The defense relied upon may be stated in these words:

1.   That as appears by the bill and exhibits, the title tendered by the plaintiffs to the defendant was not good and marketable, as required by the contract set forth.

2.   That the Philadelphia Trust, Safe Deposit and Insurance Company, trustee, was authorized to make sale of the property described in the bill only with the consent of Lenore M. Allison, and that it is not shown that Lenore M. Allison has consented to the sale of the described premises.

3.   That the personal consent of Lenore M. Allison is necessary, and that no other person can be authorized by any court to exercise this consent for her.

4.   That the giving of such consent is a necessary step in the transfer of title to land in Maine, and that if any person can be authorized to consent in behalf of Mrs. Allison, such authority must come from the courts of Maine, which have exclusive jurisdiction over the subject matter.

The pivotal question is whether Mrs. Allison's committee could, under the decree of the Court of Common Pleas of Philadelphia, give consent to the sale, with the same effect as if it had been given by Mrs. Allison personally, when not under guardianship. The fact that Mrs. Allison personally gave her consent to the decree may be disregarded, for it is practically conceded, and such is the law, that while Mrs. Allison is under guardianship as an habitual drunkard she is incapable of giving consent, the same as if she had been adjudged insane. She is conclusively presumed to be incapable of conducting her affairs. She cannot transact any business. She cannot make a valid deed or bond. She cannot waive the notice of protest on a bill. She cannot waive the provisions of her husband's will, and elect to take dower. She cannot do anything which involves the exercise of discrimination and judgment. *Cockrill* v. *Cockrill*, 79 Fed. Rep. 143; *L'Amoreux* v. *Crosby*, 2 Paige, 422; *Imhoff* v. *Witmer's Adm.*, 31 Pa. St. 244; *Wadsworth* v. *Sharpsteen*, 8 N. Y. 388; *Penhallow* v. *Kimball*, 61 N. H. 596; *Ashby* v. *Palmer*, 1 Merivale, 296; In re Wharton, 5 DeG. M. & G. 33. So here, the right to consent implies the right not to consent. The exercise of the right is an election, and involves the exercise of judgment, to do which Mrs. Allison is incapable.

So too we may dismiss the question whether the committee, irrespective of the decree of the court, had authority to consent for Mrs. Allison. The right to consent was personal to her. She might exercise it or not, according to her fancy or her judgment. No one else could exercise it for her, in the absence of statute authority, except under the decree of a court having jurisdiction to authorize its exercise. *Penhallow* v. *Kimball*, 61 N. H. 596; *Heavenridge* v. *Nelson*, 56 Ind. 90; *Merrill* v. *Emery*, 10 Pickering, 507; *Sherman* v. *Newton*, 6 Gray, 307; *Kennedy* v. *Johnston*, 65 Pa. St. 451; *Griswold* v. *Butler*, 3 Conn. 227; *Pinkerton* v. *Sargent*, 102 Mass. 568. We know of no case where the facts are like those in the case at bar. But the cases we have cited, all involving the right of personal election, are so closely analogous in principle to this one that they may be regarded as authorities on the question. And, too, this case must be distinguished from the class of cases,

some of which are cited by the plaintiff, in which it is held that a guardian may avoid or confirm the deed or other contract of his own ward, or may indorse a note payable to him, or may take an appeal for him, or may do many other things which are proper for the collection or conservation of the estate which has been committed to his management and control. These matters relate to the administration of the estate, and do not involve the exercise of a right of personal election, given to the ward by statute or contract. In this case, Mr. Pettinos, the committee, had nothing to do with the management or control of the trust estate.

It remains to inquire as to the effect of the decree of the court in Philadelphia. It is not disputed that the Court of Common Pleas of Philadelphia had jurisdiction to appoint a committee, or guardian, of Mrs. Allison. And it is clearly shown by the constitution and statutes of Pennsylvania which are made a part of the record that that court did have such jurisdiction. The extent of the power of that court under the constitution and statutes is stated in *Kennedy* v. *Johnston*, 65 Pa. St. 451, as follows: "In this State the Fifth Article of the Constitution, section 5, confers upon the Court of Common Pleas the power of a court of chancery, so far as relates (inter alia) to the persons and estate of those who are non compos mentis. The Act of 13th June, 1836, relating to lunatics and habitual drunkards, was passed to carry out the provision of the constitution." And again in *McGinnis* v. *Com.*, 74 Pa. St. 245;—"Under our statutes, an habitual drunkard is classed with a lunatic, and all such are special subjects in relation to whom the Court of Common Pleas are expressly invested with the jurisdiction and powers of a court of chancery. In effect the lunatic is the ward of the court, and his estate is in custodia legis." Thus it is seen that the Court of Common Pleas of Philadelphia not only has jurisdiction over the persons and estates of lunatics and habitual drunkards such as is commonly exercised by probate courts in this State, but also in the exercise of this jurisdiction it possesses broad chancery powers. It is a court of equity, as to matters within its jurisdiction. Such is the effect of the constitution and statutes of Pennsylvania as interpreted by the highest court in that State.

So the question now is,—Can a court having jurisdiction of the person and estate of a lunatic or drunkard, and being also possessed of chancery powers, authorize the committee or guardian to consent to a conveyance by the trustee, when the ward is no longer competent to consent? We think it can. It is true, as we have already said, that the right to consent was personal to Mrs. Allison. So long as she was sui juris, no one else could exercise it for her. But suppose the title to the property had been in her instead of in the trustee, the right to convey it would have been personal to her. The one right was no more personal than the other. It is not doubted that the court, after she was adjudged incompetent, might authorize, or even in some cases, order her committee to convey her estate. If it is competent for a court of equity to authorize or order a sale when the title is in her, why may it not authorize her committee to consent to a sale for her, if consent is a necessary prerequisite, when the title is in a trustee for her benefit? We perceive no valid distinction. In each case, it is in reality the court acting for the ward, doing what she can no longer do, consenting when she can no longer consent.

The underlying reason for the existence of such a power is, we think, because the good of the ward requires it. It seems to us to be a proper chancery power. It may be indispensable for the protection or conservation of the ward's interests. And it must be assumed that it will not be exercised except it be for the advantage of the ward.

No case precisely in point has been cited by counsel, nor have we found any. But there are cases which in principle are closely analogous. The right to elect between a testamentary provision and dower is personal to the widow. If she dies, it cannot be exercised by her heirs. *Sherman* v. *Newton*, 6 Gray, 307. If she is insane, her guardian, as such, cannot exercise it. *Pinkerton* v. *Sargent*, 102 Mass. 568. Nevertheless, the almost unbroken current of authority is that where the person entitled or bound to elect is a lunatic, the court having jurisdiction of the matter will make the election in her behalf. 1 Pomeroy Eq. Juris. sect. 510; *State* v. *Ueland*, 30 Minn. 277; *Washburn* v. *Van Steenwyk*, 32 Minn.

336; *Van Steenwyk* v. *Washburn*, 59 Wis. 483; *Penhallow* v. *Kimball*, 61 N. H. 596; *Kennedy* v. *Johnston*, 65 Pa. St. 451. So, in *Wilder* v. *Pigott*, L. R. 22 ch. Div. 263, it was held that the court could confirm a marriage settlement for an insane wife, though the right to confirm was personal to her.

We conclude that the Court of Common Pleas of Philadelphia had the power to authorize Mrs. Allison's committee to consent to the conveyance in her behalf.

The defendant contends next that the decree of the Philadelphia court could not have any effect, no matter what authority or jurisdiction may have been conferred upon that court by statute in Pennsylvania, because the land to be affected lay not in Pennsylvania, but in Maine, and because questions involving titles to land in a State are exclusively cognizable by the courts of that State.

It is true, as claimed, that the laws of the State in which land is situated control exclusively its descent, devise, alienation and transfer, and the effect and construction of instruments intended to convey it, and that the disposition of immovable property, in whatever manner, is exclusively subject to the government within whose jurisdiction the property is situated. *United States* v. *Fox*, 94 U. S. 315; *Hutchinson* v. *Caldwell*, 152 U. S. 65. It is true, also, that while a court having jurisdiction over the owner of land in another State may compel him to transfer, by proceedings in personam, it cannot empower its master, or committee, guardian, administrator or other officer to transfer the land. And the deed of the officer of the court of land outside the jurisdiction of the court is ineffectual. *Watts* v. *Waddle*, 6 Pet. 389; *Walkins* v. *Holman*, 16 Pet. 25; *Hotchkiss* v. *Middlekauf*, 96 Va. 649; *Davis* v. *Headly*, 22 N. J. Eq. 115.

But this is a different case. The Philadelphia court is not undertaking to transfer the title to land in this State, nor to make any decree which affects the title, or the mode of its conveyance. The Trust Company has the title in fee. It wishes to convey it, but its power to do so is limited, not by the laws of the State, but by the terms of the trust deed. The court creates neither the power nor the limitation. The giving consent does not transfer the title.

It merely affects the exercise of the power. It removes an obstacle to the exercise of the power. The court did not attempt to act upon the land, but upon one of the parties. It did not assume jurisdiction over lands in Maine. It merely exercised jurisdiction to do what its ward, if sane, might have done. It consented that the trustee having title might convey it. See *Washburn* v. *Van Steenwyk*, 32 Minn. page 356. If a court with appropriate jurisdiction over the parties may compel a transfer of land in another state by in personam proceedings, it is difficult to see why it may not permit a transfer,—which is this case,—by similar proceedings. And we are unable to perceive how the decree of the Philadelphia court, having jurisdiction of the parties, was in any sense an infringement of the exclusive jurisdiction of this State over the land.

The court are of opinion, accordingly, that the deed tendered by the plaintiffs to William C. Allison, as set forth in the bill, conformed to the agreement of sale of May 27, 1909, which we have referred to, and conveyed a good and marketable title to the real estate described in the agreement, subject, of course, to incumbrances mentioned therein, and that specific performance should be decreed as prayed for.

*Bill sustained with costs. Decree for specific performance to be entered by a single Justice.*