ALMON CRIPPEN, a lunatic, by Henry Crippen his committee, *vs.* CULVER.

An action cannot be maintained by the committee of a lunatic, to recover the value of property levied upon and sold under a judgment and execution obtained by regular process of law against the lunatic alone, after the appointment of a committee, on a just demand, and to which it is not claimed or proved there was any defense.

A judgment recovered against a lunatic after the appointment of a committee of his person and estate, without first obtaining leave from a court of equity to institute a suit against him, is not *void,* nor even erroneous; nor is the party acting under it a *trespasser.*

The remedy of a lunatic thus improperly proceeded against is by application to the court appointing the committee, to restrain the prosecution of the suit at law and to punish the plaintiff for contempt.

THE complaint in this action was in the nature of a bill in equity. It stated that in the month of December, 1849, Henry Crippen was duly appointed by the county court of Saratoga county, a committee of the person and estate of Almon Crippen, he, the said Almon then and there being a lunatic, and having been previously adjudged a lunatic, by and under the direction of said court in due form of law. That the said Henry Crippen, in the same month of December, 1849, was duly qualified as such committee, and immediately thereafter took possession of the person and estate of the lunatic, in the town of Milton in said county

Crippen *v.* Culver.

of Saratoga, and had ever since held the entire control of the person and estate of the lunatic. That the defendant in the month of June, 1850, commenced an action against the lunatic before Samuel DeForest, Esq. a justice of the peace of the town of Milton, *for an alledged conversion of property*, and recovered a judgment against the lunatic for $12,02 on the 1st day of July, 1850, on which judgment execution was issued on the 5th of August, 1850, which was levied by a constable on a horse belonging to the estate of the lunatic worth $100, which horse was sold by the direction of the defendant, to satisfy the said judgment, on the 30th of September, 1850. The complaint further averred that the committee had no notice or knowledge of the commencement of the suit, or the rendition of the judgment ; that the defendant knew of the appointment of the committee, and that he had the control and custody of the person and estate of the lunatic, at the time said action was commenced, and intentionally concealed from the committee the fact that said action was commenced. That no permission was given to the defendant, either by the supreme court, or the said county court, to commence said action. The plaintiff, by his committee, demanded judgment, that " the said defendant may be adjudged to return the said horse to the control and custody of the said committee and to pay all damages consequent upon the taking and detention of the said horse, to the amount of $50 ; or to pay in money the value of the said horse, with all damages as aforesaid ; and also to discharge the said judgment before the said justice, and to pay the costs of this action." The answer admitted the recovery of the judgment and the issuing of the execution, and the sale of the horse as stated in the complaint, but alledged that said horse was worth no more than the sum of $40. It denied that Almon Crippen was a lunatic at the time, or that Henry Crippen was his committee and had the charge and custody of the said Almon and his estate, but affirmed that said Almon had control of himself and his horse at the time of the said judgment and levy. It averred that Henry Crippen knew of the commencement of the suit, and of the recovery of the judgment, and that the defendant had caused an

Crippen v. Culver.

execution to be issued, and levied on the property of the said Almon Crippen. It denied generally all the allegations of the complaint not admitted. The reply took issue on all the averments contained in the answer. The facts about which there appeared to be no dispute between the parties were: that after the appointment of Henry Crippen, as committee of Almon Crippen, who was found to be a lunatic in December, 1849, and after he took upon himself the care and custody of the person and property of the lunatic, and in June, 1850, the defendant commenced the suit and recovered the judgment, on which execution was issued and levied on the horse, which was sold by his direction, as stated in the complaint. Previous to the time of commencing the suit on which the judgment was recovered, the defendant commenced a suit before the same justice against the lunatic and his committee. A motion was made to dismiss the proceeding, on the ground that no permission had been obtained from the supreme or county court to prosecute the action, which was granted by the justice, and the suit was withdrawn. No permission was ever granted to the defendant, who knew of the appointment of the committee, to commence any suit against the lunatic. It further appeared in evidence, that after the first action was dismissed or withdrawn, Henry Crippen was informed by the defendant's attorney that unless he settled the claim the defendant would sue his brother Almon; that Henry replied, he knew nothing about the claim and should do nothing about it. The constable who held the execution called on Henry Crippen before he made the levy and requested him to pay it. Henry said he should not pay it; that Almon had property enough at the barn, or elsewhere, to pay it. He afterwards levied on the horse and sold him for $40,50, and after satisfying the execution tendered the balance of the money to Henry Crippen, which he refused to receive. The jury found the value of the horse to be $86.

*J. B. McKean*, for the plaintiff.

*A. Bockes*, for the defendant.

Crippen *v.* Culver.

C. L. ALLEN, J. There is no allegation in the complaint that the judgment was obtained upon a fraudulent or invalid consideration, or that the demand upon which it was founded was not a just one. It is not alledged or pretended that the defendant in that action had a good defense to it, of which he, the committee, could not avail himself, by reason of fraud or accident, or by the act of the opposite party. The only allegation tending towards such an averment is, that the defendant "*intentionally concealed* from the committee, the fact that the action was commenced." There is no evidence to support that charge, except that the action was commenced against the lunatic alone, and that the committee resided four or five miles from the village of Ballston Spa where the lunatic and defendant and justice resided. It does not appear that he had positive notice of the proceedings, except from the fact that his counsel knew that the suit was commenced, and he had previously been informed of the claim, and that the lunatic would be prosecuted, unless it was settled. I am not only not satisfied from the evidence, that the commencement of the suit was *intentionally* concealed from the committee, but I think the fair inference is otherwise. But if it was, unless the committee had a good defense to the action, of which he was deprived by reason of his ignorance of it, that fact alone would not aid him here, unless he should be permitted to say that he was prevented from applying to the proper court, for an order to restrain the defendant's proceedings. But for that he had ample opportunity, as will be shown hereafter.

The question then presented for consideration is whether an action can be maintained by the committee of a lunatic to recover the value of property, levied upon and sold under a judgment and execution obtained by regular process of law, against the lunatic alone, after the appointment of a committee, on a demand not alledged to have been dishonest, but for aught that appears fairly and honestly due, and to which it is not claimed or proved there was any defense. Or in other words, whether a judgment recovered against a lunatic after the appointment of a committee of his person and estate, without leave of the court is *void*, and the party acting under it a trespasser. It was not

denied on the trial, it was in fact conceded, that the defendant was guilty of a contempt of court, in instituting his suit before the justice, without leave, and that on a proper representation, he would not only have been restrained from proceeding, but would probably have been punished for his contempt. This is undoubtedly correct. It is a contempt of court to commence a suit at law against a lunatic without permission, after notice of the inquisition declaring his incompetency. If any person has a legal or equitable claim against him, the proper course is to apply to the court by petition, for the payment, or for leave to prosecute. And a party will not be permitted to enforce payment by a suit at law, except by the express direction or sanction of the court. If the party obtains a judgment at law it is a contempt of court for him to issue execution and cause it to be levied on property of the lunatic which is under its exclusive control and protection. (*Lamoureux* v. *Crosby*, 2 *Paige*, 422. *Matter of Heller*, 3 *Id.* 199. 5 *Id.* 489. 7 *Id.* 513.) But if a party proceed without permission and at his peril and obtains a judgment, which he collects by execution without being restrained by the court, the proceedings are not void. They are not even irregular or erroneous. In *Sternbergh* v. *Schoolcraft*, (2 *Barb. S. C. Rep.* 153,) the action was on a judgment recovered before a justice of the peace against Sternbergh, while he and his property were under the custody and control of a committee under a commission of lunacy. And it was contended that the judgment was void; that the justice had no jurisdiction of the *person* of Sternbergh, because at the time of its rendition, his committee had charge of his person and property. The court said, "This position is clearly untenable. The judgment was not void. The authorities are decisive on this point. *The judgment was not even erroneous.* It could not have been reversed on error, for the cause assigned. The justice had full jurisdiction of the person of Sternbergh, subject only to the interference of the court of chancery." So in *Robertson* v. *Lain*, (19 *Wend.* 650,) a commission had been issued and the defendant had been found an habitual drunkard. A motion was made to set aside the proceedings, on the ground of irregularity. The court in deny-

Crippen *v.* Culver.

ing the motion, observed, that the court of chancery must be left to enforce its own jurisdiction. In the *matter of Heller,* (3 *Paige's Rep.* 199,) the chancellor said, " although the lunacy of the defendant may not always prove a legal defense, this court, upon a proper application by the committee, will restrain such a proceeding and compel the plaintiff to come here for justice. See also in the *matter of Hopper,* (5 *Id.* 489.) Thus it will be seen that an idiot or lunatic may be sued as he may sue, at law, after the execution of the commission of lunacy and after his person is placed under the care of a committee, though the court will always permit his committee to assist in managing the prosecution or defense. He loses in fact none of his estate, rights of property or rights of action. (8 *Barb.* 552. *And see* 6 *Wend.* 497 ; 18 *John.* 134.)

If he is prosecuted at law without permission, the remedy of the party is to proceed for contempt, as the cases before cited show. The court has ample power not only fully to restrain all proceedings, but to indemnify the committee as well as to punish the party guilty of the contempt. It may be argued that a lunatic may be proceeded against secretly, and a judgment and execution obtained against him, and his property be sold, without the knowledge of the committee, so as to afford him an opportunity of applying to the court for relief; and that while his committee *may* apply to the court for the exercise of its power in a summary way, where the facts come to his knowledge in season so to do, he is not required to pursue that course, but may bring his action in equity, asking relief; and especially when as in the present case, the judgment has been collected, and satisfied on execution. I know there is a class of cases, where equity will relieve from the effects of a judgment at law. Thus in *Foster* v. *Wood,* (6 *John. Ch.* 87,) it was said that chancery will relieve against a judgment at law, where the defendant was ignorant of the fact in question, pending the suit; or where it could not have been received as a defense ; or where the party was prevented from availing himself of the defense by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. So in *Huggins* v. *King,*

(3 *Barb. S. C. Rep.* 616,) the court made the same observation, remarking that *the plaintiff in that case had a good defense to the action* in which the judgment was recovered against him, and was prevented from setting up that defense by a gross fraud practiced upon him by the defendants. The same rule was recognized and sanctioned in *Vilas* v. *Jones,* (1 *Comst.* 281.) But in all these cases, the party complaining had a good defense in the suit at law, of which he was deprived by the fraudulent or improper act of the opposite party, unmixed with negligence on his part. As the chancellor remarked in the *matter of Hopper,* (5 *Paige,* 489,) " If there is no remedy at law, and judgments have been improperly recovered against a lunatic for *pretended claims which were not justly due,* it may be a proper case for the committee to proceed by bill in equity, to be relieved against such proceedings."

While, therefore, a court of equity has the power, and it is its right and duty to set aside a judgment for fraud, in cases of the nature which I have been considering, yet it is believed they have never interfered to disturb a judgment recovered against a lunatic by due process of law, unless the consideration has been impeached, and no other remedy has existed. Now what are the facts on which the present action is based? A judgment has been recovered against the plaintiff, Almon Crippen, by due and regular process of law, after commission found and a committee appointed. There is no allegation in the complaint, or evidence offered, to impeach the consideration of that judgment. It is not contended that it was for an invalid or unjust claim ; or that any defense existed against it. The process of the court is claimed, because the party was guilty of a contempt in his proceedings, by which it is argued that the judgment is void. The committee had full opportunity to have applied for an order restraining the proceeding of the defendant, if not before obtaining his judgment, at least before a sale under the execution, as he was informed of it and was requested to pay it. Instead of making application to stay the sale, and for the proper punishment of the party for his contempt, he states to the officer holding the process, that the lunatic has property sufficient to pay the judgment, on which a levy can be made, and

Crippen *v.* Culver.

informs the constable where some of it may be found. A levy and sale is made, and the judgment fully satisfied, and after all these proceedings, suffered by his own permission or neglect, the lunatic by his committee comes into court with the present action. It appears to me he has mistaken his remedy. He should have applied to the proper court, in the proper form, for the relief which he really had.

The power there was ample, and could have been exercised to a much fuller extent than the present action would warrant, even if it should be sustained. The court could have granted all the relief necessary after sale of the property. It could and would have fully compensated the committee by imposing a fine to a sufficient amount to have covered the value of the horse, and to have indemnified him for all damages and costs. The relief asked for in the complaint certainly could not be granted, in any event. In the first place the complaint asks that the defendant may be adjudged to return the horse to the control and custody of the committee, and to pay all damages consequent upon the taking and detention of the said horse, to the amount of $50, or to pay in money the value of the horse. The horse was sold under the execution, and passed from the possession and control of the defendant before the action was commenced. The complaint also asks to set aside the judgment, the consideration of which is not impeached, and which has been paid and satisfied. The only relief that could be granted would be for the value of the horse, and the action amounts, then, to virtually trover or trespass, though claimed to be for equitable relief. I think it cannot be maintained. It might be said that this being an equitable action, the plaintiff cannot claim equity until he does equity; that he should either have impeached the consideration of the judgment, or offered to pay the defendant's just demand. But I do not deem it necessary to dwell upon this; as the other view which I have taken disposes of the case, without considering the other points which have been presented.

There must be judgment of nonsuit entered for the defendant, or the complaint must be dismissed with costs.

[SARATOGA SPECIAL TERM, February 2, 1852. *C. L. Allen,* Justice.]