(98 App. Div. 426)

## STERLING v. STERLING et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. CANCELLATION OF INSTRUMENTS—INCAPACITY—FRAUD.

    Evidence *held* sufficient to sustain a finding that at the time plaintiff conveyed certain real estate and surrendered a certain mortgage to his father and brother, worth $2,700, in consideration of a reserved life estate in certain premises, the entire value of which did not exceed $2,000, plaintiff was mentally incompetent, and that said conveyances should be set aside.

2. SAME—JUDGMENTS—RES JUDICATA.

    Plaintiff, an incompetent, before the appointment of a committee, after having surrendered a note which he held against his brother, filed a claim thereon against his brother's estate, and, the claim being rejected, brought suit thereon, in which he denied that the note had ever been paid. His incompetency was not pleaded therein, though he was represented by able counsel and his testimony given in that trial disclosed no sign of mental weakness. *Held*, that a judgment in favor of the defendant in such action was res judicata in a subsequent action by plaintiff to set aside the surrender of the note on the ground of incompetency.

**3. SAME—BONA FIDE PURCHASERS.**

Where an incompetent was caused to transfer certain real estate and to cancel a mortgage to his father and brother in consideration of a life estate in certain property of much less value, which the brother bought at execution sale, he was not entitled to protection as a bona fide purchaser at such sale on the vacation of the conveyances made by the incompetent.

Appeal from Special Term, Herkimer County.

Suit by Matthew H. Sterling, as committee of Charles J. Sterling, an incompetent, against Louise S. Sterling, as administratrix of the estate of William H. Sterling, deceased, and others, impleaded with Matthew H. Sterling, as executor of Luther P. Sterling, deceased. From a judgment vacating certain acts and conveyances performed and made by the incompetent, Louise S. Sterling and others appeal. Reversed in part.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Eugene E. Sheldon, for appellants.

A. B. Steele, for respondent.

HISCOCK, J. This action was brought by the above-named plaintiff to have vacated and set aside a conveyance of a house and lot, a cancellation of a real estate mortgage, and a cancellation and surrender of a promissory note, all claimed to have been made by the incompetent person on or about April 13, 1897, upon the ground that said person was incompetent to perform said acts, and was improperly induced and persuaded to do the same for a grossly inadequate consideration. The learned trial justice found in plaintiff's favor upon all of the issues presented, and rendered a judgment granting the remedies demanded, together with certain other incidental relief.

We think that the judgment should be affirmed in so far as it grants relief against the deed and cancellation of the mortgage, but that it must be reversed in so far as it attempts to adjudicate in favor of plaintiff with reference to the note, upon the ground that the issues involved in that branch of the case have already been determined adversely to plaintiff's claim by a judgment in another action. The transactions under review sprang out of what is characterized by the appellants'. counsel as an attempted family settlement. Luther P. Sterling, who has died since the judgment was entered, was the father, and the incompetent person and William H. Sterling were his sons. The defendants Louise S. Sterling and Merritt and Raymond Sterling were respectively the widow and children of the son William, who had died before said transactions. Luther was the owner of a small farm upon which at the date in question (April 13, 1897) there was a mortgage for $1,000 and several years' interest, which had been executed to, and was then held by, the incompetent son, for borrowed money. The latter was also the owner of a small place near by, said to have been worth about $900, and of a $450 note given to him in part purchase price of premises sold to his brother William H. Sterling, and upon which the principal and some interest was due. Upon said date the incompetent executed a conveyance of his house and lot to the father, and a cancellation of the mortgage, and, as is now claimed, surrendered up

to the father the note in question for the benefit of the defendant Louise Sterling and her children, and as part of the same transaction the father executed to Merritt Sterling a conveyance of his farm, purporting to reserve therein for the benefit of the incompetent, Charles, a life estate after the death of the grantor and his wife, and Merritt Sterling executed to Raymond a transfer of a small interest in some other real estate. Charles did not receive any consideration whatever for his transfer, cancellation, and surrender except the above-mentioned purported life estate. Without attempting to review it in detail, we think that the evidence justified the conclusions of the trial justice that the son Charles was at this time unable to properly appreciate the character and effect of his acts, and that the defendants Luther and Merritt Sterling took advantage of his condition to procure from him an unconscionable contract or arrangement upon a grossly inadequate consideration. The plaintiff was appointed committee of Charles in 1898. So far as we are able to discover, the record does not disclose whether any inquiry was made as to the duration of the incompetency prior to the appointment of the committee. The evidence upon this appeal, however, fully warrants the conclusion that the incompetent person, who at the time of the transactions in question was about 50 years old, was uneducated, being unable to read or write; that he was, and for a long time at least had been, weak-minded and silly, and subject to violent outbursts of temper, incapable of performing skilled or high-class labor, lacking in capacity to do business, and easily imposed upon in transactions of even the most simple nature. At and for a considerable time he had lived with his father, being unmarried, and the defendant Merritt Sterling was at the time a member of the same household. While, as stated, it is claimed by the learned counsel for the appellants that all of the transactions were part of and constituted a family adjustment and settlement, and while there is some evidence that Charles volunteered to do some or all of the acts now complained of, it is apparent that his father and Merritt Sterling, who were the main beneficiaries of the transactions, and who, of course, thoroughly understood and appreciated his weakness, either encouraged or took advantage of his improvident disposition and acts to procure from him an arrangement which practically stripped him of everything he had for a consideration which was at the best of inconsequential value. There was and is a grave doubt whether the purported reservation of a life estate in the deed from Luther to Merritt Sterling, and to which Charles was in no way a party, was valid or effective. Hornbeck v. Westbrook, 9 Johns. 73; Bridger v. Pierson, 45 N. Y. 601. But, even if it be assumed that such reservation was effective, the value thereof was entirely disproportionate to the value of the gifts and grants made by Charles Sterling. While the trial justice made no express finding upon these valuations, the evidence fairly seems to warrant the conclusion that the entire value of the premises in which the purported reservation of Charles' life estate was made did not exceed $2,000; whereas the value of the house and lot conveyed by him, of the mortgage canceled, and of the note claimed to have been canceled aggregated in the neighborhood of $2,700.

With this brief statement of some of the reasons which lead us to an affirmance of the judgment so far as it relates to the cancellation of the deed and satisfaction of the mortgage, we pass to a consideration of the other portions of the judgment which treat of the note, and revive that as a claim and lien against and upon the property of the maker, William Sterling, now in the hands of his widow and children, and which provisions, as already indicated, we think are barred by a prior adjudication.

In May, 1898—and consequently before any committee was appointed—Charles commenced an action at law against Louise S. Sterling, as administratrix of her husband, seeking to recover the amount of said promissory note. The defendant duly appeared in that action, and, in addition to the denial of material allegations of the complaint, affirmatively set forth as defenses that the note had been paid, satisfied, and discharged; also that as a part of a family settlement (referring to the transactions already detailed), and in consideration of the conveyances then made and of said settlement, the plaintiff had released and discharged said note; also that a claim had been presented upon said note against the estate of the maker, and, the validity of such claim having been disputed, and the note rejected, the plaintiff had failed within the time required by the statute to commence an action, so that his claim was barred. Upon the issues thus presented and outlined, the case came to trial in the Supreme Court, and a verdict was rendered in behalf of the defendant, upon which judgment was subsequently duly entered. Within the elementary and familiar principle that a judgment is to be regarded as conclusive between the parties and their privies upon any issue which was or might have been litigated within the pleadings, we must regard this judgment as conclusively establishing that the note in question, either through a valid payment, cancellation, or discharge, or through operation of the statute of limitations, had ceased to become a valid claim against the estate of the maker. Neither do we have any doubt that such adjudication in an action brought against the representative of the estate of the maker of the note inures to the benefit of the present defendants, who hold to said estate the relations already indicated, and who, through said estate, have taken the property against which enforcement of said note and claim is sought in this action. Plaintiff, appreciating that this judgment is an obstacle to the recovery of the desired relief with respect to the note, under an amendment of his complaint, granted upon the trial, has secured provisions in the decree in this action setting aside said judgment and all steps and proceedings based thereon. This relief was based simply upon the general evidence of incompetency already referred to, and upon further proof that no evidence of such incompetency was offered upon the trial of the action at law in response to the contention of defendant therein that said note had been surrendered and canceled.

It is not and cannot be claimed that the judgment attacked was void, or even irregular, although the plaintiff, Charles J. Sterling, might have been incompetent at the time he brought the action, no committee having been appointed. No case has been called to our attention in which equity in another suit has been asked to grant relief against a

judgment at law rendered in an action voluntarily brought by an alleged incompetent person as plaintiff. In fact, this relief almost universally has been sought where judgments founded upon unjust claims have been obtained against parties defendant. It will be necessary to observe some of the general rules which have been laid down upon this subject for the purpose of formulating some principle by which to reach a proper decision upon the peculiar facts of this case.

In Ross v. Wood, 70 N. Y. 8, is cited with approval the rule laid down by Chancellor Kent in Foster v. Wood, 6 Johns. Ch. 87, that:

"Chancery will not relieve against a judgment at law on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit, or it could not have been received as a defense, or unless he was prevented from availing himself of the defense by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part."

And it is further said in the case cited that:

"The rule should not be relaxed to retry questions deliberately tried and adjudicated by courts of equity having concurrent jurisdiction of the subject-matter with that in which the action to be relieved from the judgment or decree is brought."

In Stilwell v. Carpenter, 59 N. Y. 414, it is said (headnote) that:

"It is not sufficient, to authorize a court of equity to restrain the execution of a judgment, to show that the claim upon which the judgment was obtained was unfounded, or that the court erroneously decided the law; nor is it sufficient to show that there was a good defense to the action of which the defendant omitted to avail himself, if, before the judgment was rendered, the facts were known to him, or might, by the exercise of reasonable diligence, have been ascertained. It must appear that the omission was the result of fraud or accident, unmixed with any fault or negligence upon his part."

Crippen v. Culver, 13 Barb. 424, was an action brought by the committee of a lunatic in equity to seek relief from a judgment duly obtained against the lunatic. While the facts in that case were very different from those in the one at bar, the judge writing the opinion cited with approval various rules laid down in other cases, stating, amongst others, the principle that:

"While * * * a court of equity has the power, and it is its right and duty, to set aside a judgment for fraud in cases of the nature which I have been considering, yet it is believed they have never interfered to disturb a judgment recovered against a lunatic by due process of law, unless the consideration has been impeached, and no other remedy has existed."

In Matter of Hopper, 5 Paige, 489, it is said:

"If there is no remedy at law, and judgments have been improperly recovered against a lunatic for pretended claims which were not justly due, it may be a proper case for the committee to proceed by bill in equity to be relieved against such proceedings."

In Demelt v. Leonard, 19 How. Prac. 140, the court considered upon appeal a motion made in the same action by the committee of the incompetent person to set aside a judgment that had been previously entered in favor of a defendant against a plaintiff for costs. The judgment was rendered against the incompetent person as plaintiff before issue of the commission to inquire in regard to her lunacy, but in that case the jury found that the plaintiff had been of unsound mind and

incapable of taking care of herself without interval for about nine years, which covered the time when the judgment was obtained. After the consideration of various cases bearing upon this subject, it was said:

"It is clear that the fairness of a judgment obtained against a lunatic may be attacked by an equitable action instituted by the committee. It may be modified or annulled in such an action."

From these cases and the principles therein laid down, we think we may deduce the rule, as applicable to the facts in this case, that equity will not relieve an incompetent person from an adverse judgment unless it clearly appears that such judgment is an unjust adjudication, and that it either has been procured by intentionally and fraudulently taking advantage of the incompetent person, or has resulted from an imperfect and inadequate defense of his rights, caused and excused by his incompetent and weakened condition. We shall not discuss at length the first element involved in this rule. It may be remarked, as somewhat differentiating the transaction of the note from those of the deed and the cancellation of the mortgage, that Louise S. Sterling, for whose benefit the first is said to have been delivered, was not a party to the transaction of April 13, 1897, and therefore cannot be accused of having personally influenced or procured the cancellation of the note. Proceeding to the consideration of the other elements in the rule which we have endeavored to lay down, there is no evidence whatever to indicate that the defendant in the action at law fraudulently or improperly sought to take advantage of the plaintiff therein through instituting or promoting said litigation. So far as appears, she was involuntarily brought into court, and there in a perfectly proper and legitimate manner sought to defend herself against plaintiff's claims. We are therefore driven to sustain the provisions of the present judgment now under consideration, if at all, upon the ground that plaintiff's rights in said first litigation were sacrificed or lost through his incompetency to secure a proper prosecution thereof, and we do not think that the facts justify such a conclusion. While, perhaps, it is not demonstrated in a legal manner, it seemed to be assumed upon this trial that the incompetent person was defeated in the action brought by him upon the defense urged that his note had been surrendered and canceled as part of the transaction of April 13, 1897. It was open to him to make either one of two replies to that defense. He might insist that said note never was so delivered up and canceled, or he might urge that such delivery or cancellation taking place was the result of his incompetent condition, and therefore not valid. These replies were inconsistent, and both could not well be urged at the same time. Upon the former trial the first ground was taken—that the note never had been surrendered—and this proposition was maintained by the plaintiff himself in his testimony, which was positive, perfectly intelligent and clear, and which, to our examination, discloses no sign of weakness or inability to understand the questions involved. We have concluded to affirm the decision of the trial justice that Charles Sterling was incompetent to manage his business affairs,

but upon all of the evidence presented to us we find it difficult to hold that he was incompetent to manage the conduct of said lawsuit. It is also significant, as bearing upon the intelligence and capacity with which he there conducted himself, that his father, Luther Sterling, upon the trial of this action, has corroborated his son's position and evidence that the note in question never was surrendered for cancellation. Charles, in said former action, was represented by the same attorneys who have appeared for the plaintiff in this action, and who have amply demonstrated their ability to carefully guard and protect his interests. Upon the same day upon which the judgment was rendered against him upon the note, plaintiff was appointed as his committee, and therefore we may safely assume that the question of his mental capacity both at and prior to the time of the trial was not overlooked. We believe that deliberately, and after careful consideration, and apparently with a preponderance of evidence to support it, Charles Sterling, by and with the advice of his counsel, elected to follow in his action against Louise Sterling the theory adopted by him that the note had not been surrendered. While the jury may have found against that contention in that action, and while the learned trial justice in the present one has found in favor of a contradictory version, these facts, as already indicated, do not by any means warrant us in setting aside the first judgment. We believe that that judgment resulted after a trial which was capably and intelligently conducted upon a theory which found much support; and, if we should now affirm the present judgment and set aside the former one, it would simply amount to extending to a party who had been fairly defeated upon one line of action the right or privilege to succeed upon another and contradictory one. We feel, after an examination of all of the evidence, that Charles Sterling conducted his case no differently than a perfectly competent person would or might have done acting under the advice of careful attorneys, and that he has not in any such way suffered from or been prejudiced by his alleged incompetency and mental weakness that we should relieve him from the defeat which he suffered.

There are some minor and incidental provisions of the judgment which seem to call for brief attention. Upon an execution issued upon the first judgment against Charles Sterling, which we have refused to set aside, the life estate purported to be reserved for his benefit in the deed from Luther Sterling to Merritt Sterling has been sold to the latter for $50. With the annulment of the deed now made, said life estate, if it existed, and the sale thereof upon a valid judgment, falls. The deed which created said life estate having been voidable, and not void, under some circumstances it might be proper to protect the purchaser upon the execution sale. We do not think, however, that Merritt Sterling, as such purchaser, is to be regarded or protected as an ordinary bona fide purchaser. He was a party to, and must be charged with knowledge of, all the conditions surrounding the transactions which have been set aside, and for that reason is not entitled to the relief or protection which otherwise might be extended. The judgment also relieves

Luther Sterling from the conveyance which he executed to Merritt Sterling, and relieves the latter from the conveyance which he executed to Raymond Sterling. These conveyances were executed in connection with and as part of the transaction which resulted in the deed and cancellation of the mortgage by the incompetent person. Ordinarily, a court of equity would not relieve the participants in and promoters of an illegal transaction from the consequences of their own acts performed in connection therewith. It is somewhat unusual to restore to Luther and Merritt Sterling the property with which they parted while engaged in taking advantage of Charles Sterling. No objection, however, is made in behalf of any of the appellants to these provisions outside of the general criticism passed upon the entire judgment, and for that reason we have concluded to allow these particular features of the decree to remain unchanged.

Judgment appealed from reversed upon the law and facts in so far as it gives relief upon the note for $450 and sets aside the judgment entered in Herkimer county clerk's office December 19, 1898, in favor of Louise S. Sterling, as administratrix, etc., against Charles J. Sterling, and the proceedings based thereon (provisions fourth and seventh), with costs to the appellants except Merritt Sterling and Raymond Sterling; and otherwise said judgment is affirmed, without costs. Costs are not allowed in favor of or against the defendants Merritt Sterling and Raymond Sterling for the reason that they have in part succeeded and in part been defeated upon this appeal. Orders entered January 27, 1902, and March 12, 1902, respectively, affirmed, with $10 costs upon one appeal, and disbursements.

Form of order to be settled upon two days' notice by Mr. Justice HISCOCK. All concur.